788 So.2d 1234 (2001)
John DOE, M.D.
v.
LOUISIANA STATE BOARD OF MEDICAL EXAMINERS.
No. 2000-CA-1987.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 2001.
*1235 Allison P. Burbank, Roy M. Bowes, Bowes & Marrero, L.L.P., Gretna, Counsel for Plaintiff/Appellant.
C. Byron Berry, Jr., Philip O. Bergeron, Adams and Reese LLP, New Orleans, Counsel for Defendant/Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, and Judge PATRICIA RIVET MURRAY.
PLOTKIN, Judge.
The primary issue in this appeal is whether or not the term "unprofessional conduct" as used under the Medical Practice Act, La. R.S. 37:1261 et seq., provides sufficient notice to a physician that his conduct violates this standard. Appellant, Dr. Robert Little, was found guilty of unprofessional conduct and sanctioned to five years probation of his license to practice medicine. We affirm for the reasons that follow.

STATEMENT OF THE CASE:
On March 24, 1999, the Louisiana State Board of Medical Examiners ("the Board") filed an administrative complaint charging Robert Wray Little, M.D. with violations of the Medical Practice Act. The complaint alleged that Dr. Little's actions constituted 1) professional or medical incompetence, in violation of La. R.S. 37:1285(A)(12), 2) unprofessional conduct, in violation of La. R.S. 37:1285(A)(13), and 3) exhibited his inability to practice medicine or osteopathy with reasonable skill or safety to patients because of mental illness or deficiency, in violation of La. R.S. 37:1285(A)(25).
*1236 The Board held an administrative hearing. The case was heard and decided by a panel comprised of doctors, as required by the Administrative Procedure Act, La. R.S. 49:955-58.
The Board rendered its decision with written reasons and concluded:
We find no evidence of professional incompetency [sic] on the part of Dr. Little, and find him not guilty of that charge.
We find that the record falls short of convincing us, by clear and convincing evidence, that Dr. Little was guilty of improper conduct with J.W. However, in view of the recommendations of Dr. Palotta, we think that Dr. Little should not have conducted any part of the examination of J.W. without the presence of a chaperone, and to that extent, he is guilty of unprofessional conduct.
With respect to the third charge, we find Dr. Little not guilty. There is no evidence in the record that his mental condition prevents him from practicing medicine with reasonable skill and safety to patients.
The Board imposed the following sanctions:
1) The license of Robert Wray Little, M.D., to practice medicine in the State of Louisiana, as evidenced by Certificate No. 012333, is hereby placed on probation for a period of five years, subject to the general terms and conditions of probation heretofore adopted by the Board, and subject to the following special conditions:
2) Dr. Little shall perform no gynecological examinations, and shall conduct no other examinations of female patients without the presence of a chaperone who is aware of the reason for her presence at the examination.
3) Dr. Little shall continue psychiatric treatment and therapy with a psychiatrist satisfactory to the Board, who shall render regular reports to the Board, but in no case less than quarterly.
4) Respondent shall pay a fine of $1,000.00 and all costs of this proceeding. The fine and costs shall be payable in the manner specified by the probation officer.
5) Dr. Little shall advise any future employers of the findings and sanctions herein made.
Dr. Little appealed the decision of the Board to the Civil District Court for the Parish of Orleans. The district court affirmed the decision and sanctions imposed by the Board. In its Reasons for Judgment, the district court found that "[t]he Board clearly had a rational basis for its discretionary determination that Dr. Little had acted unprofessionally and that determination is supported by substantial evidence in the record."

STATEMENT OF THE FACTS:
During April and May of 1997, Dr. Little performed tuberculosis screenings at Health Care for the Homeless Clinic in New Orleans. On April 28, 1997 he performed a tuberculosis screening of Johnna W. ("JW"). During the patient interview, Dr. Little was present in the examining room with JW and Isabelle Hamori Eustice (Dr. Eustice).[1]
Dr. Little testified that during the interview, JW continually complained that she had a rash over her body that itched and became inflamed when scratched. Dr. Little eventually agreed to look at the rash. Dr. Little and Dr. Eustice testified that JW then suddenly pulled off her shirt and bra, to allow her back to be examined. The doctors looked at her back and then Dr. Little asked JW to put on her clothes. *1237 Dr. Little then continued the interview process. He questioned JW about her sexual history and drug use and discussed issues of religion and faith with her. Dr. Eustice then reviewed the tuberculosis treatment regimen with JW and then left the room.
As Dr. Little continued the interview and attempted to get a nurse to begin the tuberculosis medication, JW again complained about a rash that was also on her legs. Dr. Little agreed to examine her legs. JW then removed her pants and underwear. Dr. Little testified that he made a visual inspection of the lesions on her leg and genital area; however, he did not touch JW.
JW testified that she was insulted by Dr. Little questioning her about sex and religion. When she first complained about the rash, both Dr. Little and Dr. Eustice examined her front and back. She lifted up her shirt, but did not undress for the doctors. After Dr. Eustice left the room, Dr. Little asked JW to remove her pants and underwear so he could look for more of the rash. JW testified that Dr. Little was nervous and shaking, and checked the door to see if it was locked. JW further testified that during this part of the examination Dr. Little touched her genitals with his ungloved hand, before she informed him that the rash was "not down there." After the examination, JW complained to one of the clinic's nurses about Dr. Little's behavior.
On May 1, 2000, JW returned to Health Care for the Homeless for a physical examination, to fulfill a requirement for admission to the Bridge House substance abuse program. JW's mother accompanied her on this visit. JW requested an optional breast exam as part of the physical examination. JW's mother left the clinic before Dr. Little began the exam. Dr. Little testified that he conducted a routine physical examination of approximately ten to fifteen minutes in the presence of a nurse. The exam included a two to three minute breast exam.
JW testified that she thought the examination was weird and took too long. Again Dr. Little was nervous and shaking while he began to massage her breasts.
On May 9, 1997, JW returned to the clinic. Dr. Little referred her to a gynecologist for a pelvic examination and advised JW that she tested negative for HIV. Dr. Little testified that JW was so elated that she jumped up and hugged him. JW testified that she thanked Dr. Little and shook his hand.
On May 16, 1997, JW returned to the clinic to see Dr. Little. During this visit, her final injection of syphilis antibiotics was administered.
Thereafter, JW filed this complaint against Dr. Little alleging improper conduct. Following an investigation, Dr. Little was asked to resign from his position at the Health Care for the Homeless Clinic.

FIRST ASSIGNMENT OF ERROR:
Appellant contends that the district court failed to conduct an independent judicial review of the administrative proceeding in accordance with La. R.S. 49:964(G)(6), as amended in 1997, and the Due Process Clause of the Fourteenth Amendment. Appellant argues that the Reasons for Judgment issued by the district court fail to address the standard of judicial review and adequately cite evidence upon which the judgment was based.
Appellant urges that the reports and testimony of Dr. Palotta, the testimony of Dr. Eustice and the testimony of Dr. Douglas Pool, do not support the decision of the Board. Dr. Palotta testified that following Dr. Little's one-year probation stemming from the 1982 incident, no restrictions were placed on Dr. Little's practice of medicine. Dr. Eustice's testimony *1238 is in accord with that of Dr. Little describing the events leading to this disciplinary proceeding. Dr. Pool testified that Dr. Little should be accountable and appropriately supervised, but stated that Dr. Little is "an excellent family physician."
Appellant also argues that JW is not a credible witness, thus the district court should not have relied upon her testimony. Specifically, JW is a recovering cocaine addict and alcoholic, and she had difficulty answering simple questions in her medical information forms.
The Board asserts that in its Reasons for Judgment, the trial court specifically identified, quoted and cited to the elements governing judicial review of agency decisions, as provided by La. R.S. 49:964(G). Moreover, the Board contends that the trial court's decision was well supported by the evidence presented. Consequently, the Board argues, appellant has failed to prove that his substantial rights have been prejudiced, as required for a reversal or modification of an administrative decision pursuant to La. R.S. 49:964(G).
La. R.S. 49:964(G), as amended in 1997, provides:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.[2]
(7) In cases covered by R.S. 15:1171 through 1177, manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
Under La. R.S. 49:964(G)(6), the reviewing court may not reverse or modify an administrative decision, unless the reviewing court determines by a preponderance of the evidence after an independent review of the record, that the Board's decision prejudiced substantial rights of the appellant.
In its Reasons for Judgment, the district court cited La. R.S. 49:964 and stated *1239 that "[i]n the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of the evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review." The district court then stated its findings of fact, as supported by the record. In conclusion, the district court stated: "The Board clearly had a rational basis for its discretionary determination that Dr. Little had acted unprofessionally and that determination is supported by substantial evidence in the record."
After reviewing the record, we find no merit to appellant's assignment of error. The district court correctly stated the standard of review under La. R.S. 49:964, and its Reasons for Judgment are supported by a preponderance of the evidence. The record reveals ample evidence to support the judgment of the district court upholding the decision of the Board.

SECOND ASSIGNMENT OF ERROR:
Appellant argues that the administrative record contains insufficient evidence to support the Board's decision and the district court's judgment that he was guilty of unprofessional conduct in violation of La. R.S. 37:1285(A)(13). Appellant argues that the Board did not establish a standard of care for his alleged unprofessional conduct. Furthermore, appellant asserts that his deviation from the Board's 1982 recommendation does not constitute unprofessional conduct because that recommendation was not permanent in nature, nor does any law require the presence of a chaperone during examinations.
The Board asserts that the record overwhelmingly supports the finding that appellant was guilty of unprofessional conduct. The testimony of Dr. Palotta, Dr. Little's psychiatrist, establishes that appellant suffers from a psychiatric condition that renders the necessity for a chaperone during examinations of female patients. Dr. Palotta has continually recommended that appellant refrain from examining female patients without a chaperone. Here, appellant examined JW's genital area without the presence of a chaperone, in violation of Dr. Palotta's recommendations.
La. R.S. 37:1285 A. provides:
The board may refuse to issue, or may suspend or revoke any license or permit, or impose probationary or other restrictions on any license or permit issued under this Part for the following causes:
* * *
(13) Unprofessional conduct
In 1982, a female patient filed a complaint against Dr. Little alleging improper sexual conduct during a physical examination. Dr. Little admitted the allegations and entered into a consent judgment whereby he agreed to undergo psychiatric treatment and follow the recommendation of his psychiatrist. Dr. Palotta recommended that Dr. Little refrain from conducting pelvic examinations of female patients and that he not examine female patients without the presence of a female chaperone.
In its Reasons for Judgment, the district court stated:
Although the statute fails to define what constitutes "unprofessional conduct[,]" the clear purpose of the statute is the protection of the public health, safety and welfare. If the conduct which puts the public at risk is personal to the physician, rather than universal to the practice of medicine, it nevertheless can constitute unprofessional conduct. I perceive no reason whatsoever why the Board cannot discipline deviation from a personal recommendation by Dr. Little's treating psychiatrist that was intended to protect both the public and Dr. Little.

*1240 The Medical Practice Act does not define the term "unprofessional conduct."
By analogy, we note the definition of "professional misconduct" of a lawyer under the Louisiana State Bar Association Rules for Professional Conduct. Rule 8.4 provides:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a judge, judicial officer, governmental agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable Rules of Judicial Conduct or other law; or
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct;
(h) Present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil manner.
For example, under the Rules of Professional Conduct a lawyer must provide competent representation (Rule 1.1), maintain confidentiality of information (Rule 1.6), and act in the client's interest (See e.g. Rules 1.7-1.10).
In In re Vaughan, XXXX-XXXX (La.10/27/00), 772 So.2d 87, the Louisiana Supreme Court stated:
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession.
Id. at p. 4, 772 So.2d at 89 (citing Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990)).
Here, the record reveals that Dr. Little had full knowledge from his prior professional discipline and conditions imposed therein, that it disqualified him from examining female patients without the presence of a chaperone. The reason for the earlier sanction was because of his improper physical examination conduct. We find that it was unprofessional of Dr. Little, in light of his personal knowledge, to perform or attempt to perform such an examination. Even if the patient suddenly disrobed, as he contends, Dr. Little had the choice of remaining with the female patient without a chaperone or leaving the room. Dr. Little should not have remained in the examination room under the circumstances, thereby allowing himself to improperly examine the patient or be accused of such behavior. As a result, Dr. Little jeopardized his own position and compromised the medical care of his patient.
The public depends on and trusts that doctors will conduct their medical practice in a professional manner. Special privileges are granted to doctors in the area of personal privacy that are not accorded to anyone else. In order to protect the public *1241 and the integrity of the profession, a physician accused of unprofessional conduct must undergo strict scrutiny within due process of law. Although Dr. Little has demonstrated his good medical conduct, support of his family and dedicated public service, he cannot be exonerated from professional discipline in this type of case. His mental condition requires that the Board impose reasonable restraints on his medical license and inform his employer of his medical limitations.
After careful review of the record in its entirety, we find that the district court did not err in finding that Dr. Little was guilty of unprofessional conduct. Dr. Little failed to follow the recommendations of his psychiatrist as agreed to in his consent judgment with the Board. Specifically, Dr. Little examined or viewed a female patient's genitalia without the presence of a chaperone in violation of the medical profession's standards.
Accordingly, there is no merit to this assignment of error.

THIRD ASSIGNMENT OF ERROR:
Appellant argues that the sanctions imposed upon him are excessive punishment in response to a finding of unprofessional conduct. He asserts that the requirements to reveal the decision of the Board to all future employers and to have a chaperone present during examinations of female patients are tantamount to revoking his license to practice medicine. Appellant argues that these requirements render him unmarketable in the medical field because of lack of private employment options and the increased cost of medical malpractice insurance. Additionally, appellant asserts that he will endure humiliation and embarrassment at being labeled a "sex pervert," even though there is evidence to the contrary.
The Board argues that this Court should only consider whether the sanctions imposed are arbitrary or capricious or an unwarranted exercise of discretion. The Board points out that the Medical Practice Act authorizes the Board to impose a harsher sanctionlong term suspension or actual revocation of Dr. Little's medical license; thus, the sanction imposed cannot be arbitrary or capricious. The Board further argues that it should have found defendant guilty of the inability to practice medicine with reasonable skill and safety to patients, by virtue of mental illness or deficiency under La. R.S. 37:1285(A)(25), because that record would have supported that charge.
We find that the trial court did not err in affirming the sanctions imposed by the Board. The sanctions imposed by the Board are appropriate to Dr. Little's unprofessional conduct. The five-year probation and its conditions do not in effect constitute a revocation of Dr. Little's license to practice medicine. Dr. Little may still be employed as a physician and may still treat patients; however, his practice is subject to certain reasonable conditions.
Accordingly, there is no merit to this assignment of error.

CONCLUSION:
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.
MURRAY, J., concurs with reasons.
MURRAY, Judge, concurring with reasons.
I concur in the majority's affirmation of the district court's judgment on the basis that the Board did not abuse its discretion in imposing these sanctions on Dr. Little for unprofessional conduct. After finding that it was unprofessional for Dr. Little to have remained in the room alone with a female patient, the Board had to balance the individual rights of Dr. Little with its primary responsibility to safeguard the *1242 public. The sanctions, although they may, as Dr. Little claims, have the seemingly harsh result of preventing him from practicing medicine, are nevertheless no more restrictive than is necessary to ensure the protection of the public. Considering the circumstances, I find the Board acted reasonably in tailoring the sanctions to the particular circumstances.
NOTES
[1] In April 1997, Eustice was a fourth-year medical student working at the clinic.
[2] La. R.S. 49:964 G(6) was amended in 1997 to allow reversal or modification if the administrative findings are not supported and sustainable by a preponderance of evidence. 1997 La. Acts No. 128. The Act also designated this amendment as a procedural change and made it applicable to all pending cases. Prior to the 1997 amendment, La. R.S. 49:964 G(6) provided for a manifest error standard of review.