JjLEON A. CANNIZZARO, JR., Judge.
Bradley Cathey, the plaintiff/appellee, is a horse trainer licensed by the Louisiana State Racing Commission, the defen-danVappellant. On March 21, 2002, the stewards[1] at the New Orleans Fair Grounds issued a ruling against Mr. Cath-ey and fined him one thousand dollars ($1,000.00). The stewards found three violations of the Louisiana Administrative Code (LAC) relative to Horse Racing Claiming Rules and Engagements and two violations of the LAC relative to Professional Standards of Horse Racing Occupations. Essentially, the stewards ruled that Mr. Cathey failed to register stable personnel, employed an unlicensed and disqualified person, and supplied funds to the account of another licensee in order to facilitate the claim[2] of a race horse named Clinton Hunting, a horse which he trained, and thereby allowed the claimed horse to remain within his stable of horses.
| ?Mr. Cathey appealed the stewards’ ruling to the State Racing Commission. Following a hearing, the State Racing Commission found that Mr. Cathey supplied the funds to facilitate the claiming of Clinton Hunting, a horse he trained, and allowed the horse to remain within his stable in violation of LAC 35:XI.9901, 35:XI.9909, and 35:XI.9931. The State Racing Commission also found that he had unlicensed and unregistered employees in violation of LAC 46:XLI.505 and 46:XLI.1103. The State Racing Commission suspended Mr. Cathey’s license for six months and fined him two thousand five hundred dollars ($2,500.00).
Mr. Cathey then filed a petition for judicial review with the Civil District Court for the Parish of Orleans. After a review hearing, the trial court rendered judgment reversing the decision of the State Racing Commission and dismissed all charges against Mr. Cathey. The State Racing Commission timely appealed the judgment of the trial court.
*416 THE STATE RACING COMMISSION’S FINDINGS
As to the charges that Mr. Cathey supplied the funds to facilitate the claiming of a horse he trained, and allowed the horse to remain in his stable, the State Racing Commission found that the following facts were established at the administrative hearing.
1. Bradley Cathey trained and stabled the race horse Clinton Hunting at his farm in Folsom, Louisiana.
2. He entered Clinton Hunting in the fourth race, a five thousand dollar ($5,000.00) claiming race, on March 14, 2002 at the New Orleans Fairgrounds.
|a3. Prior to the fourth race, Game Necaise, an acquaintance of Mr. Cathey, obtained an owner’s license for the purpose of submitting a claim for Clinton Hunting.
4.Penny Jenks, also an acquaintance of Mr. Cathey, accompanied Mr. Ne-caise to the Horsemen’s Bookkeeper.[3] Once there, Ms. Jenks deposited a six thousand dollar ($6,000.00) cheek issued by Bradley Cathey to her. The check was used to open an account in Mr. Necaise’s name. It was drawn on the account of B.C. Holding Company of Folsom, L.L.C., signed by Bradley Cathey, and dated the same day as the race, March 14, 2002. Mr. Necaise testified that he never saw the check that was deposited into the bookkeeper’s account in his name.
5. To explain the six thousand dollar ($6,000.00) check used to claim the horse, Mr. Necaise testified that Ms. Jenks owed him money for work done on her automobile. Mr. Cath-ey testified that he owed Ms. Jenks six thousand dollars ($6,000.00) for tack[4] equipment purchased from her.
6. Mr. Necaise completed a claim for Clinton Hunting. The claim was subsequently awarded to Mr. Ne-caise.
7. After the race, Clinton Hunting was picked up by Mr. Cathey’s groomer, Wilfred Jarrett.[5] The horse was returned to the barn area occupied by Mr. Cathey where it was loaded into his truck and transported by Ms. Jenks to Mr. Cathey’s farm in Folsom. Both Mr. Cathey and Mr. Ne-caise testified |4that the barn to which Clinton Hunting was returned was located on the Cathey farm but that it was a separate barn Mr. Ne-caise had leased from Mr. Cathey a month earlier. A copy of the lease was produced.
Regarding Bradley Cathey’s failure to register stable personnel, namely Wilfred Jarrett, and his employing of unlicensed personnel, namely Penny Jenks, the State Racing Commission found the following:
1. Bradley Cathey admitted in testimony that on March 14, 2002, Ms. Jenks transported Clinton Hunting from his farm in Folsom to the racetrack and back again. Racetrack *417 arrival and departure forms for other dates also show that Ms. Jenks transported horses for Mr. Cathey. Mr. Cathey stated that he did not employ Ms. Jenks, but that she was just helping out.
2. Mr. Cathey had not registered Ms. Jenks. Further, he admitted knowing that she was not licensed due to her bad standing in other racing jurisdictions.
3. Mr. Cathey’s work list of stable personnel filed with the State Racing Commission showed that he failed to amend and/or otherwise list Mr. Jarrett as stable personnel.[6]
4. Mr. Cathey admitted that he had not listed Mr. Jarrett. He claimed, however, that he had not employed Mr. Jarrett, but that Mr. Jarrett was just helping out because the regular groomer had recently quit.
| .STANDARD OF REVIEW
The judicial standard of review for final agency decisions is found in La. R.S. 49:964. Pursuant to the statute, the reviewing court determines whether the administrative findings are supported by a preponderance of the evidence. In doing so, the reviewing court makes its own findings based on what it determines to be a preponderance of the evidence. Doe v. La. State Board of Medical Examiners, 2000-1987 (La.App. 4 Cir. 5/30/01), 788 So.2d 1234. The statute, however, mandates that the reviewing court give due regard to the agency’s determination of credibility issues. La. R.S. 49:964(G)(6). Specifically, Subsection G of La. R.S. 49:964 provides, in pertinent part:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
[[Image here]]
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues. (Emphasis added).
J^DISCUSSION
In reversing the State Racing Commission’s decision, the trial court gave lengthy Reasons for Judgment setting forth her findings. Specifically, she found that the claim of Clinton Hunting by Mr. Necaise was invalid because the claiming procedure set forth in LAC 35:XI.9911 was violated when a check rather than cash was deposited with the Horsemen’s Bookkeeper. Thus, the trial court concluded *418 that because the decision was based on an invalid claim, the decision was arbitrary and an unwarranted exercise of the State Racing Commission’s discretion. The trial court further found the evidence insufficient to, support the finding that Mr. Cath-ey had junlicensed, unregistered employees as the State Racing Commission failed to present! evidence that Mr. Jarrett and Ms. Jenks were employees of Mr. Cathey.
On appeal, the State Racing Commission contends that the trial court erred in applying the standard of review set forth in La. R.S. 49:964(G) by disregarding both the substance of the charges and the weight bf evidence relied upon to support the administrative action. It further asserts that where the administrative agency has the ‘opportunity to judge the credibility of witnesses by first-hand observation, and the reviewing court does not, La. R.S. 49:964(¶) mandates that due regard be given to; the agency’s determination, citing Ream, M.D. v. La. Bd. of Medical Examiners, 2002-0906, p. 3 (La.App. 4 Cir. 5/21/03), 850 So.2d 723, 726.
Mr. Gjathey, on the other hand, argues that thel trial court applied the appropriate standard of review when she determined that the State Racing Commission’s findings were not supported by a preponderance of ;he evidence. He asserts that the State R icing Commission failed to prove that he interfered with the claiming of Clinton Hunting, that the horse remained under lis control ^notwithstanding the claim by Garrie Necaise, and that he employed unlicensed and unregistered personnel.
At the hearing to review the State Racing Commission’s decision, the trial court heard argument of counsel only. No live witness testimony was presented. The credibility calls by the State Racing Commission are therefore entitled to “due regard” as the Commission had the advantage of first-hand observation of the demeanor of witnesses and the reviewing court did not. Angelle v. Louisiana State Racing Commission, 2002-0610, 2002-0611, p. 4 (La.App. 4 Cir. 9/25/02), 828 So.2d 1153, 1156. A complete reading of the trial court’s Reasons for Judgment in this case reveals that the trial court acknowledged the correct standard of review pursuant to La. R.S. 49:964(G)(6), but did not give due regard to the State Racing Commission’s determination of credibility issues. The trial court found credible the statements of Mr. Cathey and his witnesses, whereas the State Racing Commission did not. In light of the standard of review discussed herein, we find the decision of the trial court to be in error.
The basis of the State Racing Commission’s decision rests on two findings of fact. First, that Mr. Cathey violated the claiming rules by supplying funds to another licensee for the purpose of claiming back or preventing another from claiming Clinton Hunting. Second, that Bradley Cath-ey employed an unlicensed, disqualified person to assist him, Ms. Jenks, and failed to register stable personnel, Mr. Jarrett.
In our opinion, the stewards presented sufficient evidence to the State Racing Commission to support the claims against Mr. Cathey. The evidence included the testimony of Constantin “Tino” Rieger, an investigator for the State Racing Commission appointed by the stewards to investigate the matter, his I ^investigation report, the race track arrival/departure slips, the Horsemen’s Bookkeeper’s records, the official “claim blank” completed by Mr. Necaise, and a copy of the check that was deposited into the bookkeeper’s account opened in Mr. Ne-caise’s name. In view of this evidence, the State Racing Commission’s findings were not arbitrary or capricious. See La. R.S. *419 49:964(6)(5). Its decision was supported by a preponderance of the evidence. See La. R.S. 49:964(G)(6). The State Racing Commission’s decision was a fair exercise of its administrative authority, and it did not prejudice Mr. Cathey’s substantial rights. Also, we find that the trial court erred in its application of the proper standard of review by not giving due regard to the State Racing Commission’s determinations of credibility.
Regarding the trial court’ s conclusion that the State Racing Commission’s decision was based on an invalid claim of Clinton Hunting because the claiming procedure was violated when Ms. Jenks deposited a check rather than cash with the Horsemen’s Bookkeeper’s account, we find the trial court erred in so holding. At no time either before the State Racing Commission or on review to the trial court did Mr. Cathey raise the issue that the claim was invalid because Mr. Necaise claimed the horse by the deposit of a check rather than cash. Furthermore, it is immaterial whether the claim was valid or not. The State Racing Commission determined that Mr. Cathey’s actions violated the rules of racing and this finding is clearly supported by the evidence.
Finally, insofar as the trial court determined that the State Racing Commission did not prove violations of LAC 46:XLI.505 and 46:XLI.110S because it introduced no evidence to contradict Mr. Cathey’s testimony that he did not employ either Mr. Jarrett or Ms. Jenks, we find she was clearly wrong. LAC 46:XLI.505 requires owners and/or trainers to report personnel changes to the ^stewards within twenty-four hours. It also provides that any owner or trainer harboring or employing an unlicensed person shall be fined. The State Racing Commission clearly demonstrated at the hearing that Mr. Cathey violated the rules of racing by not notifying the stewards of his change in personnel and that unlicensed personnel were assisting him in racing activities. Although Mr. Cathey denied employing Mr. Jarrett, he acknowledged that Emile, his longtime groom, had quit and Mr. Jarrett, who was not registered, was assisting him. Mr. Cathey also admitted that he allowed Ms. Jenks to transport Clinton Hunting from his farm to the racetrack and back even though she was unlicensed due to her poor standing in other racing jurisdictions. Thus we find that the State Racing Commission satisfied its burden of proof by a preponderance of the evidence.
CONCLUSION
Accordingly, for these reasons, we reverse the judgment of the trial court and reinstate the decision of the Louisiana State Racing Commission.
REVERSED.

. Stewards are racing officials appointed by the Louisiana State Racing Commission for a race meeting who supervise the daily conduct of racing. The stewards have full authority to investigate, inspect, search and inquire into all matters under their supervision. See La. R.S. 4:143 and 4:172.

. A "claiming race” is any race in which the ownership of every horse running therein may be transferred from the present owner to a claimant in accordance with the claiming rules and engagements promulgated by the Louisiana State Racing Commission. See LAC 35:XI.9901.

.La. R.S. 4:143 defines "Horseman” as an owner or trainer of a race horse. La. R.S. 4:185 provides that at each race meeting conducted in the state, there shall be a bookkeeper for the collection, disbursement, and investment of monies belonging to horsemen licensed and racing at such a race meeting who shall be known as the Horsemen’s Bookkeeper. The Horsemen’s Bookkeeper shall be bonded, selected, and employed by the authorized representative of horsemen racing in Louisiana.

. Stable and horse riding gear.

. Jarrett's name also appears in the record as "Joucert,” "Joumet," and "Jarret.”

. The rules of racing require that owners and trainers register all stable personnel with the Commission, and report changes in stable personnel within 24 hours. The rules also prohibit the employment of unlicensed personnel. LAC 46:XLI.505.