933 So.2d 831 (2006)
Charles McMAHON
v.
LOUISIANA STATE RACING COMMISSION.
No. 2003-CA-2097.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 2006.
*832 John M. Holahan, Jr., Metairie, LA, for Appellant, Charles McMahon.
Charles C. Foti, Attorney General, Kim Raines Chatelain, Assistant Attorney General, New Orleans, LA, for Appellee, Louisiana State Racing Commission.
(Court composed of Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME).
LEON A. CANNIZZARO, JR., Judge.
Charles McMahon, the plaintiff/appellant, is a jockey licensed by the Louisiana State Racing Commission ("Racing Commission"), the defendant/ appellee. On April 4, 2002, the stewards[1] at Delta Downs racetrack in Vinton, Louisiana, issued a ruling against Mr. McMahon suspending *833 him for six (6) months and referred his case to the Racing Commission for further consideration. The stewards found Mr. McMahon had possessed an electric shocking device[2], also known as a "battery," on racetrack grounds in violation of La. R.S. 4:175(D) and Louisiana Administrative Code (LAC) 35:I.1705. Mr. McMahon appealed the stewards' ruling to the Racing Commission.
The Racing Commission held a hearing on the stewards' referral and Mr. McMahon's appeal on April 22, 2002, but Mr. McMahon failed to appear. Following the hearing, the Racing Commission upheld the stewards' findings and suspended Mr. McMahon's jockey's license for a period of five (5) years. After receiving notice of the suspension, Mr. McMahon retained counsel who filed a petition for rehearing, asserting that he had not received timely notice of the April 22, 2002 hearing. The Racing Commission granted the petition. After the rehearing on December 19, 2002, the Racing Commission again upheld the stewards' ruling, but imposed a three (3) year suspension of Mr. McMahon's license.
Pursuant to La. R.S. 49:964, Mr. McMahon filed a petition for judicial review with the Civil District Court for the Parish of Orleans. After reviewing the record of the administrative hearing and considering the argument of all counsel, the district court rendered a judgment that affirmed the decision of the Racing Commission and dismissed Mr. McMahon's appeal. The district court also denied a request by Mr. McMahon to remand the matter to the Racing Commission for the taking of additional evidence. Mr. McMahon timely appealed the district court's judgment.

THE FACTS PRESENTED TO THE RACING COMMISSION
A review of the transcript from the December 19, 2002 administrative hearing before the Racing Commission discloses the following facts.
On March 20, 2002, Mr. McMahon and ten other jockeys participated in the tenth race at Delta Downs. Following the race, Mr. Kent Pevoto and Mr. Troy Thibodeaux, investigators for the Racing Commission and detectives for the Calcasieu Parish Sheriff's Office, along with Mr. Chad Bonneau, Director of Security for Delta Downs, and Ms. Kyleen Verdine, a Delta Downs security officer, conducted a routine check of the jockeys and the jockeys' room to search for any racing contraband or other evidence of racing violations. The jockeys' room is a private locker room where the jockeys dress and clean themselves before and after races. At Delta Downs, a door opens from the jockeys' room directly into the adjacent paddock area where the horses are saddled and mounted prior to a race and returned for dismount afterwards. Also, a privacy wall or partition measuring six (6) feet high is located immediately inside the jockeys' room as one enters from the paddock area.
Pursuant to the authorized search, Mr. Bonneau, who was positioned immediately inside the entrance to the jockeys' room, received the jockeys as they entered from the paddock area and directed them to Detectives Thibodeaux and Pevoto, who were to conduct pat down searches on the other side of the partition. The search proceeded without incident until the final jockey, Mr. McMahon, entered the room.
*834 A jockey's valet carrying a saddle was standing in the line immediately preceding Mr. McMahon. As the valet and Mr. McMahon approached, Mr. Bonneau opened the door to the jockeys' room wider to allow the valet to enter. As he did, Mr. Bonneau noticed Mr. McMahon make a sudden and suspicious move to his left and behind the door. Directly next to the opened door stood a steel, I-beam support column and an adjacent bench. Mr. McMahon then entered the jockeys' room and was directed to Detectives Thibodeaux and Pevoto. Mr. Bonneau then walked through the opened door into the paddock area and looked behind the support I-beam and the adjacent bench. There, on the ground, he saw an electric shocking device. Although it had rained that day and the grounds were very sloppy, the device was dry and clean. Mr. Bonneau retrieved the battery and reentered the jockeys' room to inform the detectives conducting the search that Mr. McMahon would have to see the stewards. However, before Mr. Bonneau could phone the stewards to tell them of his discovery, Mr. McMahon became irate and yelled, "you didn't find it on me, you found it on the ground." As the detectives searched Mr. McMahon, Mr. Bonneau notified the stewards of the discovered contraband.
Mr. McMahon claimed that as he and the valet were approaching the jockeys' room he moved to his left and slightly behind the door to hold it open for the valet whose hands were full. He denied that he had ever possessed the battery. Mr. McMahon also claimed that Mr. Bonneau had reentered the jockeys' room and announced that he had found the battery on the ground prior to his (Mr. McMahon's) stating that device was not found on him but on the ground.

ASSIGNMENTS OF ERROR
Mr. McMahon asserts the following assignments of error:
1. The district court erred in determining that the Racing Commission's finding that he possessed an illegal electric device on racetrack grounds was supported by a preponderance of the evidence;
2. The district court erred in not conducting its own review of the evidence pursuant to La. R.S. 49:964(F) or allowing the submission of additional evidence;
3. The district court erred in upholding the Racing Commission's suspension of Mr. McMahon's license;
4. The district court erred in not remanding the matter to the Racing Commission for further review; and,
5. This Court would err in affirming the district court's judgment, as the record contains no transcript of the trial court's July 28, 2003 hearing.

STANDARD OF REVIEW
The judicial standard of review for final agency decisions is found in La. R.S. 49:964. Pursuant to the statute, the reviewing court determines whether the administrative findings are supported by a preponderance of the evidence. In doing so, the reviewing court makes its own findings based on what it determines to be a preponderance of the evidence. Doe v. La. State Board of Medical Examiners, XXXX-XXXX (La.App. 4 Cir. 5/30/01), 788 So.2d 1234. The statute, however, mandates that the reviewing court give due regard to the agency's determination of credibility issues. La. R.S. 49:964(G)(6).

DISCUSSION
In his first assignment of error, Mr. McMahon argues that the Racing Commission did not satisfy its burden of proof by a preponderance of the evidence. *835 He asserts that the only evidence presented at the Racing Commission hearing that even remotely connected him to the battery found in the paddock area was Mr. Bonneau's testimony that he saw him make a sudden and suspicious move to his left and behind the door as the valet entered the jockeys' room. That statement alone, Mr. McMahon contends, did not establish that he ever possessed the battery on the racetrack grounds.
Mr. McMahon also argues that the search conducted by Mr. Bonneau and the racing investigators following the tenth race was unreliable and deficient in several respects. He points to the fact that the investigators failed to inspect the jockeys' room and paddock area prior to the post tenth race search to ascertain whether the premises was, in fact, free of any contraband and/or illegal devices. Thus, Mr. McMahon argues, any jockey, valet or other track employee who might have passed through the area prior to the search and the discovery of the device could have discarded it behind the door. He also noted that the investigators failed to check the electrical device for fingerprints.
Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, establishes that the fact sought to be proved is more probable than not. Cay v. State, Dept. of Transportation and Development, 93-0887 (La.1/14/94), 631 So.2d 393, 395.
In affirming the Racing Commission's decision, the district court gave no reasons for judgment. However, it is apparent from the record that the Racing Commission relied on the testimony of Detectives Thibodeaux and Pevoto that Mr. McMahon knew of the battery before Mr. Bonneau had the opportunity to show them the device or inform them of its discovery, as evidenced by the timing of his statement, "you didn't find it on me, you found it on the ground." In other words, Mr. McMahon implicated himself when he made that statement.
Specifically, Detective Thibodeaux testified as follows:
A. When he come (sic) in, I couldn't see it. I could see [Mr.Bonneau]. When I see (sic) the device, Mr. Bonneau was on the telephone, and I would see it. He had it cupped in his hand, something like this. I don't remember if it was his right or left that he was on the phone to the stewards. That is whenever (sic) I knew what we were holding Mr. McMahon for.
Q. So, its you testimony, if I understand you correctly, that this gentlemen over here this jockey started saying where . . .
Q. Started saying where something was found before Mr. Bonneau had even said anything about what was found?
A. Yes.
Detective Pevoto then testified as follows:
Exactly how it happened was myself and Investigator Thibodeaux were standing in that confined area so the jockeys would have to walk through us to get into the jockeys room so no one could avoid being searched. [Mr. McMahon] walked hurriedly between us. Investigator Thibodeaux grabbed him by the arm and asked him to stop. As they were going behind the partition wall, [Mr. Bonneau] was entering the room. [Mr. Bonneau] said, hold him, he's got to go to the stewards office.
At that point, I didn't know why he had asked [Det. Thibodeaux] to hold him or for him to stop. [Mr. Bonneau] then cupped his hand towards me and showed me the device and said he found it on the ground outside the jockeys' room. He proceeded to call the stewards.
*836 Later, Detective Pevoto reiterated, "I am saying that [Mr. McMahon] was standing on the other side of the wall and could not see what was in [Mr. Bonneau's] hand and [Mr.] Bonneau never stated what was in his hand."
At the hearing to review the Racing Commission's decision, the trial court heard argument of counsel only. No live witness testimony was presented. The credibility calls by the Racing Commission are therefore entitled to "due regard" as the Racing Commission had the advantage of first-hand observation of the demeanor of witnesses and the reviewing court did not. Cathey v. Louisiana State Racing Commission, XXXX-XXXX, p. 7 (La.App. 4 Cir. 9/24/03), 855 So.2d 414, 418.
In our opinion, the stewards presented sufficient evidence to the Racing Commission to support the claims against Mr. McMahon. Detectives Thibodeaux and Pevoto were very clear in their testimony that when Mr. Bonneau informed them that Mr. McMahon would need to see the stewards they had no idea why and were taken aback by Mr. McMahon's excited utterance, "you didn't find it on me, you found it on the ground." Although they acknowledged that they had not searched the paddock area or the valets and other jockeys for contraband prior to commencing the post tenth race search, they testified Mr. McMahon could not have made the statement when he did unless he was aware of the existence and location of the electrical device. In addition to the detectives' testimony, the stewards submitted the testimony of Mr. Bonneau and the investigation report. In view of the totality of the evidence, the Racing Commission's findings were not arbitrary or capricious. See La. R.S. 49:964(G)(5). Its decision was supported by a preponderance of the evidence. See La. R.S. 49:964(G)(6). The Racing Commission's decision was a fair exercise of its administrative authority, and it did not prejudice Mr. McMahon's substantial rights. Also, we find the trial court applied the proper standard of review by giving due regard to the Racing Commission's determination of credibility.
The second and fourth assignments of error relate to the scope of review. Mr. McMahon argues in the second assignment of error that the trial court judge erred in not conducting her own review of the evidence pursuant to La. R.S. 49:964(F) and (G) and in not allowing him to submit additional evidence pursuant to La. R.S. 49:964(E). In the fourth assignment of error, he argues that the trial court erred in not remanding the matter to the Racing Commission for further review.
Specifically, Mr. McMahon argues that he was precluded from subpoenaing witnesses on his behalf to testify at the rehearing before the Racing Commission because he was not given sufficient notice of the December 19, 2002 hearing date. He contends that he intended to subpoena other jockeys who were in the jockey room at the time of the incident who would have refuted the stewards' claim that he was aware of the electrical device prior to Mr. Bonneau's informing the detectives of its discovery, but he did not receive notice of the hearing until December 10, 2002. Such short notice, Mr. McMahon argues, precluded him from subpoenaing the witnesses at least fifteen days prior to the hearing as required by the Administrative Procedure Act. Thus, Mr. McMahon argues the trial judge should have allowed him to submit additional evidence or should have remanded the matter to the Racing Commission for the taking of additional testimony and further review.
The record reflects that Mr. McMahon's hearing before the Racing Commission was originally scheduled for August 16, *837 2002, but was continued to September 20, 2002. After continuing the matter a second time, the Racing Commission heard Mr. McMahon's case on December 19, 2002. Each time, notice of the continuance was sent to Mr. McMahon. In addition, the record contains a copy of a letter dated November 4, 2002, from Mr. Paul Bonin, Special Counsel for the Racing Commission, to Mr. McMahon's attorney informing him that the matter had been rescheduled to December 19, 2002. As evidenced by the stamped date, Mr. McMahon's attorney had received the letter on November 5, 2002. In view of this evidence, we find no merit to Mr. McMahon's claim that he did not have sufficient prior notice of the December 19, 2002 hearing to subpoena witnesses on his behalf.
Furthermore, the record indicates that Mr. McMahon filed his petition for judicial review in January 2003. The review hearing was originally scheduled for March 23, 2003, but was continued twice. Eventually the case was heard on July 28, 2003. However, at no time between the filing of his petition for judicial review and the day of the hearing, did Mr. McMahon ever inform the trial court of any alleged procedural irregularities, including deficient notice, before the Racing Commission. In the absence of any alleged procedural irregularities, the trial court was not required to order the Racing Commission to take and consider additional evidence. La. R.S. 49:964(E) and (F).
In the judgment, the trial court judge stated the case would not be remanded to the Racing Commission for the taking of additional evidence pursuant to La. R S. 49:964(E) because "no application for additional evidence was timely filed before the matter was set for hearing on the merits." The judge also noted that "[Mr. McMahon] could have requested witnesses to be subpoenaed to appear before the Commission to testify on his behalf, and did not." Considering the evidence, we find the trial court did not err by not allowing Mr. McMahon to subpoena witnesses for the review hearing or remanding the matter to the Racing Commission for further consideration. Thus, we conclude Mr. McMahon's second and fourth assignments of error are without merit.
Mr. McMahon argues in the third assignment of error that the trial court erred in upholding the Racing Commission's decision suspending his jockey's license for three (3) years. We disagree.
La. R.S. 4:175(G) provides that "[w]hoever violates or attempts to violate [La. R.S. 4:175] shall be fined not less than one thousand dollars nor more than five thousand dollars, or imprisoned with or without hard labor for not less than one nor more than five years, or both." Moreover, LAC 35:I.1706(A) provides that the license of any person whom the Racing Commission finds to have violated La. R.S. 4:175(D) and/or LAC 35:I.1705 as it pertains to an electrical or mechanical device or other expedient, shall be revoked and such person shall be ineligible for licensing for a period not less than five years from the date such revocation takes effect. LAC 35:I.1706(B) provides that in addition to the license revocation and a minimum period of ineligibility, the commission may fine the violator an amount not less than $3,000.00 and not more than $10,000.00. In this case, the Racing Commission suspended Mr. McMahon's license for a period of three (3) years even though it could have imposed a greater suspension and a fine as well.[3] The imposed penalty, in our opinion, is both reasonable and appropriate *838 considering the evidence, Mr. McMahon's past racing history[4], and the state's interest in maintaining the integrity of the sport.
Finally, in the fifth assignment of error, Mr. McMahon argues that the appeal record is deficient because it does not contain the transcript of the July 28, 2003 review hearing, and, therefore, this Court cannot render a fair decision.
Regarding judicial review of the Racing Commission's adjudication, La.R.S. 49:964(F) allows the parties to request oral argument; however, oral argument is not guaranteed much less transcribed, as the scope of review is limited to a review of the administrative record. In this case, although the district court heard oral argument from both parties, which apparently was transcribed, the fact that the appellate record does not contain a transcript from those arguments does not prevent us from rendering a fair judgment. A review of the certified record of the Racing Commission, including the transcript from the December 19, 2002 hearing and the documentary evidence, indicates that the district court had a sufficient basis to conclude that the Racing Commission satisfied its burden of proof by a preponderance of the evidence. Mr. McMahon's fifth assignment of error is without merit.

CONCLUSION
Accordingly, for the above reasons, the judgment of the trial court upholding the decision of the Racing Commission to suspend Mr. McMahon's license for a period of three (3) years is affirmed.
AFFIRMED.
BELSOME, J., concurs in the result.
BELSOME, J., concurs in the result.
Both sides presented conflicting evidence regarding both the discovery of the battery and Mr. McMahon's behavior before and after the discovery. Under the abuse of discretion standard, this court should give great deference to the factfinder's factual determinations. In light of this deference, the trial court's judgment should be affirmed.
NOTES
[1] Stewards are racing officials appointed by the Louisiana State Racing Commission for a race meeting who supervise the daily conduct of racing. The stewards have full authority to investigate, inspect, search, and inquire into all matters under their supervision. The stewards are authorized to suspend racing privileges of an individual licensee for up to six months. If the stewards determine a six-month suspension to be inadequate, they may refer the matter to the Racing Commission for a de novo determination of the penalty. See La. R.S. 4:143 and 4:172.
[2] An electrical shocking device is approximately the size of a cigarette lighter and is made of one or two batteries wired by a copper coil with one stationary and one spring-loaded for contact. The device delivers a shock when contact is made with the horse and is used to achieve greater speed.
[3] The suspension is below the mandatory minimum of five (5) years. The stewards, however, did not appeal the imposed penalty. Thus, it will not be disturbed.
[4] The record indicates that Mr. McMahon has been a jockey for more than twenty years. His past racing violations include testing positive on drug screen tests in 1990 and 1991, a 14-day suspension for failure to ride due to weather conditions in 1999, and a 7-day suspension and $200.00 fine for careless riding in 1999.