850 So.2d 723 (2003)
John M. REAUX, M.D.
v.
The LOUISIANA BOARD OF MEDICAL EXAMINERS.
No. 2002-CA-0906.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 2003.
Rehearing Denied August 15, 2003.
*725 Michael D. Cox, Bossier City, LA, for Plaintiff/Appellant.
Don S. McKinney, Adams and Reese LLP, New Orleans, LA, for Defendant/Appellee.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE and Judge LEON A. CANNIZZARO JR.
JOAN BERNARD ARMSTRONG, Judge.
This is an appeal by a physician from a decision of the trial court affirming an administrative decision revoking the physician's license to practice medicine. Because the decision of the trial court is amply supported by the record as a factual matter, and because the record reflects that the physician was not deprived of any of his legal rights in the proceedings of the trial court, we will affirm.
This action was begun by the filing of an administrative complaint, against Dr. John M. Reaux, M.D., before the Louisiana State Board of Medical Examiners ("the Board"). The crux of the complaint against Dr. Reaux is that he prescribed narcotics and other controlled substance drugs to patients without performing physical examinations and without legitimate medical purpose in exchange for payments by those patients. Dr. Reaux was represented by legal counsel. There were discovery and other pre-hearing proceedings. A two-day administrative hearing was held at which evidence was presented and Dr. Reaux was given the opportunity to cross-examine and present rebuttal evidence. The Board presented the testimony of several witnesses, including two undercover narcotics police officers, and numerous exhibits. Dr. Reaux testified but did not call any other witnesses and introduced one exhibit. The Board issued a lengthy written opinion in which it made numerous findings of fact including determinations of credibility. The Board revoked Dr. Reaux's license to practice medicine. Dr. Reaux brought an action for judicial review of the Board's determination. The trial court clarified or modified the Board's decision to reflect that fewer patients were involved than might have been suggested by the Board's opinion, but the trial court ruled that: "In all other respects, the *726 Board's findings of fact and conclusions of law are affirmed." Dr Reaux then brought the present appeal.
The standard of judicial review of the Board's decision was set out by this court most recently in Holladay v. Louisiana State Board of Medical Examiners, 96-1740 (La.App. 4 Cir. 2/19/97), 689 So.2d 718, writ denied, 97-0730 (La.5/1/97), 693 So.2d 740, which decision, like the present case, involved a physician's improperly prescribing narcotics and other controlled substance drugs. Specifically, Holladay states:
The standard of appellate review of a decision by an administrative agency is distinct from and narrower than that which pertains to general appellate jurisdiction over civil and criminal appeals. Considerable latitude must be afforded administrative agencies to perform functions delegated to them under law, and courts should not intervene unless the administrative agencies' conduct is clearly unreasonable and arbitrary.... An administrative agency's proceedings and decisions are presumed to be legitimate and correct, and the burden is on the appellant to demonstrate the grounds of reversal or modification.
The exclusive grounds upon which an administrative determination or decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G), La. Const., 1974, Art. 5, 510(B). Pursuant to La. R.S. 49:964(G), the district court may not reverse or modify an administrative decision unless the decision was arbitrary, capricious, characterized by abuse of discretion, clearly unwarranted exercise of discretion, or manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Where the administrative agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues. La. R.S. 49:964(G).

* * *
In reviewing the Board's decision, the district court had to determine whether the Board's factual findings were supported by substantial evidence and whether the Board's conclusions and sanctions were arbitrary or capricious or constituted an abuse of its discretion. To reverse the Board's decision, the district court had to find that the Board's factual findings constituted manifest error.... To modify the penalties imposed by the Board, the district court had to find that the penalties were arbitrary, capricious, an abuse of discretion, or grossly disproportionate to the offense. La. R.S. 49:964(G)(5);
97-0730, p. 4-7, 693 So.2d 740; 689 So.2d at 721-22 (citations omitted). We apply these standards of review to the present appeal.
Captain Shane Evans, narcotics commander of the East Baton Rouge Parish Sheriff's Office testified with respect to patient J.A., for which patient Dr. Reaux had written several prescriptions for narcotics or other controlled substance drugs. J.A. committed suicide. A large number of prescription pill bottles were found in his Utah apartment. Captain Evans introduced into evidence the pill bottles as well as a $150.00 money order slip and a Federal Express receipt showing a shipment to Dr. Reaux's clinic in Baton Rouge. Based upon the dates of the prescriptions, it appears that Dr. Reaux wrote prescriptions for J.A. while J.A. was in Utah and *727 that Dr. Reaux's medical records, which reflect examinations of J.A. on the dates of the prescriptions, were falsified.
Undercover narcotics police officer R.O. testified. She went to Dr. Reaux's clinic. She filled out a form and made a cash payment of $125.00. In response to a nurse's inquiry as to what type of pain she was having and what had caused her pain, R.O. said, "I guess my neck" and "everyday life". R.O. also said she was used to taking Lortab. R.O. went into Dr. Reaux's office where he wrote prescriptions for Lortab and other controlled-substances drugs with refills. Dr. Reaux never rose from his desk much less performed any physical examination upon R.O. R.O. returned to Dr. Reaux's clinic a month later. Dr. Reaux again performed no physical examination but, instead, simply wrote prescriptions for Lortab, Flexeril and Xanax. Dr. Reaux told R.O. that she should bring him some medical records or paperwork in case he was ever audited but that he "had no problems pushing the rim of the envelope". Dr. Reaux's medical record for R.O. relates a history of pain which R.O. never gave him and a physical examination of R.O. which never occurred.
Another narcotics undercover police officer, L.S., also testified. He went to Dr. Reaux's clinic. He was seen by a receptionist whom he asked about diet pills. He talked to a nurse and said that he was interested in an energy boost and losing weight. The nurse suggested Adipex and said that patients liked it because of the energy boost. The nurse then went to Dr. Reaux's office while L.S. returned to the lobby. The nurse came to the lobby with a prescription for Adipex written by Dr. Reaux. L.S. paid $50.00 in cash. Thus, Dr Reaux never even spoke to L.S., much less examined him, prior to prescribing a controlled-substance drug.
A patient of Dr. Reaux's, K.C., testified. He went to Dr. Reaux's clinic. He saw Dr. Reaux on the first visit, but Dr. Reaux performed no physical examination, and Dr. Reaux wrote for him a prescription for controlled-substance drugs. K.C. paid $80.00 for the prescription. K.C. went to Dr. Reaux's clinic four more times, and received prescriptions for controlled substance drugs each time, but never saw Dr. Reaux on any of these four visits. Instead, K.C. called ahead, paid for the prescriptions at the front desk, and picked up his prescription at the front desk. Dr. Reaux's medical records stated that there were physical examinations of K.C. despite the fact that such physical examinations never occurred.
Another patient of Dr. Reaux's, K.J., was observed at a party, the night before his death, drinking narcotic cough syrup and taking pills as well as alcoholic drinks. Dr. Reaux had prescribed narcotic cough syrup as well as other controlled substance drugs for K.C. and the cough syrup and other prescribed drugs were found at the scene of K.J.'s death. Dr. Reaux's medical records reflect that K.J. showed symptoms of cardiomegaly and/or congestive heart failure, but Dr. Reaux did not refer K.J. to a heart specialist. The autopsy showed that K.J.'s death was caused by cardiomyopathy and massive cardiomegaly.
The Board received testimony and documentary evidence as to Dr. Reaux's prescribing of controlled-substance drugs to several other patients as well. The pattern was that Dr. Reaux performed no physical examinations and falsified elaborate medical records. Also as to these patients, Dr. Reaux testified inconsistently with the patients' testimony as to his performing physical examinations.
Dr. Reaux's first argument on appeal is that, because no expert testimony was received at the Board hearing, (a) he *728 was deprived of due process of law in that the Board presumed him guilty and (b) the statutes and regulations which Dr. Reaux was found to have violated were unconstitutionally vague. Dr. Reaux presented to the Board both of these arguments related to the lack of expert testimony. The Board dealt with them thus:
In his post-trial memorandum, Respondent raises a number of issues relating to the manner in which the hearing was conducted:
First, in his Objection No. 6, he objects to the Board not granting him the presumption of innocence by failing to present any expert testimony from a physician as to the standard of care, and as to the meanings of the various rules and regulations of the Board.
In Objection No. 13, he "objects to the rules and regulations in Subchapter A and B of La. R.S. 49:6901-6923, in that they are unconstitutionally vague. Specifically, it is claimed that section 6917 is void because the following terms or phrases are not defined in the regulation and are not susceptible of definition:
"the usual course of a disease"
"the expected time for healing"
"generally accepted course of medical practice"
"the usual course of professional medical practice".
He further alleges that the following phrases in Section 6907 render it void for the same reasons:
1. "prescribed sound nutrition"
2. "thorough and complete physical examination".
As to Objection No. 6, we point out that the objection probably relates to the weight to be given to the testimony as a whole. We further note that R.S. 49:956(3) specifically provides that "the agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence". We interpret this to mean that we may utilize our own expertise in evaluating the testimony in a case.
Laws and regulations are presumed to be constitutional. One asserting unconstitutionality bears the burden of establishing that fact. Respondent offers no support for his claim other than the bare assertion of his contention. Dr. Reaux testified that he thought the above provisions are vague, but also stated that he thought he knew what they mean. So should any physician know, if he is properly educated in his field. We find Objection No. 13 to be without merit.
We agree with the Board. Based upon the record of the proceedings in the trial court, and the Board's meticulous written opinion of eighteen single-spaced pages, there is not the slightest indication that the Board presumed Dr. Reaux to be guilty. The Board is made up of physicians and the Board is statutorily-authorized to rely upon its own medical expertise. La. R.S. 49:956(3). Unlike a jury of laypersons, a board made up of physicians is able to evaluate medical issues without the assistance of expert testimony.
As to the argument that the statutes and regulations are unconstitutionally vague in the absence of expert testimony as to their meaning, we find dispositive the Board's findings of fact that Dr. Reaux knew what the statutes and regulations meant and that any properly educated physician would know what the statutes and regulations meant. The statutes and regulations are not addressed to laypersons, who indeed may not know what they *729 mean but, rather, are addressed to physicians who will know what they mean.
Dr. Reaux's next argument on appeal is that he has been denied equal protection of the law because his license to practice medicine was revoked whereas, in Holladay v. Louisiana State Board of Medical Examiners, 96-1740 (La. App 4 Cir. 2/19/97), 689 So.2d 718, the Board suspended for three months the license of Dr. Holladay and placed him on three years probation. Dr. Reaux cites no legal authorities in support of this equal protection argument.
This court discussed the Board's authority to determine penalties in the Holladay decision:
Last, Dr. Holladay contends that the penalties imposed by the Board were grossly disproportionate to the alleged offense. An administrative agency's decision assessing a penalty should not be set aside unless it is arbitrary, capricious or characterized as an abuse of discretion. La. R.S. 49:964(G)(5).... Considerable latitude must be allowed to public agencies to perform functions delegated to them under law and courts should not intervene unless such conduct is clearly unreasonable and arbitrary.... The imposition of an administrative sanction is in the nature of a disciplinary measure.
In deciding what, if any, discipline to impose, the Board may be strict, moderate or lenient. Unless arbitrary, such discretionary decisions must be upheld.... In light of the evidence and the fact that the Board could lawfully revoke Dr. Holladay's license altogether, it appears that the Board was extraordinarily lenient in selecting the sanctions imposed. Accordingly, there is no indication that the penalty imposed by the Board was arbitrary, capricious, an abuse of discretion, or grossly disproportionate to the offense.
96-1740, p. 18; 689 So.2d at 727 (citations omitted). We note that, in Holladay, we characterized the Board's penalty as "extraordinarily lenient". We do not believe that the Board's decision to be lenient in one case obliges it to exercise leniency in every subsequent case. Holladay was decided six years ago and, over time, the Board's attitude towards infractions may change and/or the individuals comprising the Board may change, so there is nothing surprising or untoward if the Board has decided to act in the present case without the leniency exhibited in the Holladay case.
Moreover, seldom are two cases truly identical in their facts, and the penalty imposed in each case must be judged in light of the facts peculiar to that case. The Board may have viewed the infractions for Dr. Reaux as more egregious than those of the Holladay case. The Board's opinion below notes that the Board had previously disciplined Dr. Reaux in connection with his medication prescriptions whereas, in Holladay, the physician involved apparently had not been previously disciplined. The Board also expressly found that Dr. Reaux extensively fabricated false medical records (relating examinations that never occurred, etc.) after learning that he was under investigation and that Dr. Reaux testified falsely before the Board. Dr. Reaux's extensive and elaborate attempts to deceive the Board, which are not paralleled in Holladay, could reasonably have elevated the Board's concerns as to Dr. Reaux. Thus, a number of factors distinguish the present case from Holladay and reasonably explain the difference between the penalty imposed in the present case and the penalty imposed in Holladay.
*730 Dr. Reaux's next argument on appeal is that he was not given the opportunity for a "La. R.S. 49:961(c) meeting" with the Board prior to the institution of proceedings against him. That statute provides:
No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license.
(emphasis added).
Dr. Reaux presented this argument to the Board and the Board addressed the issue thus:
The hearing was held as scheduled, on January 25 and 26, 2001. Prior thereto, Respondent filed a number of objections to the pre-hearing procedure:
"Number 1: The Respondent objects to the denial of a timely requested pre-hearing conference pursuant to L.R.S. 49:961(c) (hereinafter '961(c)' meeting) with regard to each count and each installment of new allegations, original or added at a later date which thereby denied him due process of law."
"Number 2: The Respondent objects to the refusal of the Louisiana State Board of Medical Examiners (hereinafter the "Board") to permit him to have present a court reporter, at his own expense, to record a 961(c) meeting and then to use the presence of said court reporter at the scheduled July 11, 2000, via process verbal hearing to waive the rights of the Respondent and thereby denying him due process of law."
"Number 3: The Respondent objects to the Board's waiver of his rights to 961(c) meetings on the basis of the Board's refusal to permit the court reporter in attendance and without a hearing or notice of the waiver from the Board's Independent Counsel and thereby denying respondent due process of law."
Respondent claims that he was denied due process of law because he was never granted a meaningful meeting under R.S. 49:961(c). He states that under the State and Federal Constitutions he has a right to confront his accusers, and a 961(c) hearing was the only opportunity given to accomplish this.
Two 961(c) hearings have been scheduled in this case. The first was halted by Respondent allegedly because of Investigating Officer's remark relative to Respondent's competency. The second was halted by Complainant because of Respondent's insistence that the meeting be transcribed by a court reporter. A third 961(c) meeting was requested by Respondent when the second Supplemental Complaint was filed. This motion was denied. Respondent contends that he is entitled to a 961(c) meeting relative to every charge leveled against him.
It is the position of the Complainant that the purpose of the 961(c) meeting is to give the Respondent an opportunity to respond to the charges against him, doctor to doctor, before the matter is brought to the attention of the Board. It is contended that Dr. Reaux was given this opportunity on two occasions. On the first, he refused to go forward in the face of the *731 Investigating Officer's alleged declaration that the matter would be brought to the Board regardless of what Dr. Reaux might say.
On the second occasion, with a new Investigating Officer in the case, the Complainant refused to have the meeting because the Respondent insisted on having the meeting transcribed in order to build a record.
R.S. 49:961(c) clearly requires that a respondent be given "an opportunity to show compliance with all lawful requirements for the retention of the license". A meeting, in which it is allegedly represented that it is immaterial what Respondent might say in response to the charges against time, does not furnish such opportunity.
On the other hand, the exchanges at the 961(c) meeting form no part of the record of the case. It is intended to give the Respondent the opportunity to answer, explain, contradict, or otherwise respond to the charges against him, in an informal setting.
The contents of the record on appeal are prescribed by La. Admin.Code § 46:9921(e), and the proceedings at a 961(c) meeting are not included. If follows that there is no right to make a record of such a meeting, and that Complainant was within his right to refuse to proceed under those circumstances.
Be that as it may, Respondent did not file an exception of prematurity or object to continuing the proceedings until shortly before the hearing. In the meanwhile, he conducted discovery and participated in pre-hearing and status conferences. In so doing he has waived his right to a 961(c) meeting. Louisiana State Board of Medical Examiners v. Bertucci, La. App. 4 Cir, 593 So.2d 798 (1992).
We conclude that Dr. Reaux failed to take advantage of the second 961(c) meeting offered him, by insisting, improperly, that the meeting be transcribed by a court reporter. Further, he failed to preserve any right he may have had by voluntarily going forward with the discovery portion of the proceedings, and thereby waived the 961(c) meeting.
We are in substantial agreement with the Board's reasoning. The statute, La. R.S. 49:961(c), does not require that the licensee's right to "an opportunity to show compliance" must be recorded and, therefore, the Board did not violate Dr. Reaux's rights by refusing to conduct the "961(c) meeting" with a court reporter present. Consequently, Dr. Reaux's insistence that a court reporter be present for the "961(c) meeting" amounted to a waiver of the meeting. It is a reasonable inference from the statute that, while "an opportunity to show compliance" must be generally fair and reasonable, the Board has some discretion as to the manner of providing that opportunity and the licensee is not entitled to dictate to the Board in that regard.
Moreover, under our Bertucci decision, cited by the Board, Dr. Reaux waived the "961(c) meeting" by not raising the issue with the Board prior to participating in discovery and other pre-hearing proceedings. The apparent purpose of La. R.S. 49:961(c) is to give the licensee an opportunity to address the Board's concerns before the proceedings against the licensee are substantially underway so that, in cases in which the licensee can convince the Board at that point that the Board's concerns are unjustified, the licensee will never be subjected to most of the burdens of Board proceedings. Dr. Reaux did not object before the Board to the alleged lack of a "961(c) meeting" until shortly before the Board hearing, after the *732 completion of substantial Board proceedings, at which point much of the apparent purpose of La. R.S. 49:961(c) could no longer be accomplished. Further, having a "961(c) meeting" on the eve of a long-scheduled hearing was apt to be a vain and useless act. This procedural issue was raised too late in the proceedings.
Dr. Reaux argues that, because undercover narcotics police officers conducted two "sting" operations against him, obtaining improper prescriptions from him, the Board exceeded its statutory authority. Initially, we note that the sting operation was conducted by the East Baton Rouge Parish Sheriff's Office, not the Board, and so Dr. Reaux's argument seems off-the-mark at best. In any case, the Board does have express statutory authority to use "inspectors, special agents, and investigators", La. R.S. 37:1270, so the investigation, even if conducted by the Board itself, would be authorized. Dr. Reaux complains that the investigation involved illegal activity, i.e., obtaining improper prescriptions, but such undercover operations by narcotics officers are lawful. See, e.g., State v. Hardy, 715 So.2d 466 (La.App. 5th Cir.1998); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Jacobson v. United States, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). Lastly on this issue, we note that Dr. Reaux is inaccurate when he states: "The case began with the Louisiana State Board of Medical Examiners participating in the creation and/or manufacture of evidence." In fact, the case began when one of Dr. Reaux's patients, J.A., while reportedly despondent over his addiction to prescription pain-killers, took his own life, and all signs pointed to Dr. Reaux improperly prescribing for J.A. such controlled-substance14 drugs. The investigation undertaken was statutorily-authorized, lawfully-conducted and urgently necessary for the protection of the public.
Dr Reaux's next argument on appeal is that the Board erred in applying its regulation on the use of drugs for "chronic" pain because the patients at issue did not have "chronic" pain. In the first place, this argument does not benefit Dr Reaux. If the patients did not have chronic pain, then there certainly would be no medical justification for Dr. Reaux prescribing long-term use of controlled-substance painkiller drugs. Thus, Dr. Reaux's (mostly fabricated after the fact, according to the Board's fact findings) medical records are organized in accordance with the Board's regulation as to treatment of chronic pain and, in fact, refer to some of the patients at issue as being treated for "chronic pain". Also, Dr. Reaux testified (mostly falsely according to the Board's fact findings) that he had attempted to comply with the Board's regulation on pain and that he found the Board's regulation "helpful". Thus, Dr. Reaux himself admitted that the Board's pain treatment regulation is applicable. Lastly on this point, the Board, which is made up of physicians, and which promulgated the pain treatment regulation, has expertise in the applicability of the regulation, and should be given some deference as to its finding that the pain treatment regulation is applicable.
Dr. Reaux's next argument is simply that the charges against him were not proven by a preponderance of the evidence. Dr. Reaux's argument, for the most part, is simply that the witnesses against him were all lying. However, the Board observed all of the witnesses, including Dr. Reaux, and found that it was Dr. Reaux who was untruthful and that the other witnesses were credible. There is no basis in the record whereby we could possibly conclude that the Board's findings *733 as to credibility are clearly wrong-manifestly erroneous. The Board was not unreasonable in finding that the witnesses against Dr. Reaux were credible.
Lastly, Dr. Reaux argues that he was wrongfully denied a suspensive appeal. However, as we have decided the merits of the appeal, this point is moot.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
LOVE and CANNIZZARO, JJ. CONCUR IN THE RESULT.