JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | iPlaintiffs-Appellants, Keith Bourgeois and Melton Wilson, professional horse trainers, appeal a January 5, 2010 judgment entitled “Decision on Judicial Review of Adjudication of the Louisiana State Racing Commission” rendered in the Civil District Court of the Parish of Orleans, affirming an adjudication of the defendant-appellee, Louisiana State Racing Commission (“LSRC”) fining both appellants $1,500.00 and suspending their licenses as horse trainers for six months, based on findings that they had each raced a horse which tested post-race positive for a long lasting tranquilizer, Fluphenazine, in violation of the rules of racing.
 

 Neither appellant disputes the Fluphe-nazine post-race positive test results. Neither appellant disputes that Fluphenazine is what is referred to as a “Class II” drug under La. Ad.Code 35:1.1797,
 
 Penalty Guidelines.
 
 Because of its long lasting qualities, Fluphenazine is sometimes referred to in racing circles as a “30-day” tranquilizer.
 

 Mr. Bourgeois does not deny knowing that a long lasting “30-day” tranquilizer had been administered on April 15, 2008, to Diamondmint Deputy, a horse Mr. Bourgeois was training, within fourteen days of running in and winning 12a race at Evangeline Downs on May 2, 2008; but he contends that he did not know the name or nature of the medication.
 

 Pursuant to a hearing, the Evangeline Downs board of racing stewards issued ruling ED 16683, suspending Mr. Bourgeois for six months and referred the case to the LSRC for further action based on the following Rules of Racing:
 

 La. Ad.Code 35:1.1795,
 
 Classification of Foreign Substances by
 
 Category
 
 [1]
 
 ;
 

 La. Ad.Code 35:1.1797,
 
 Penalty Guidelines
 

 [2]
 

 ;
 

 
 *854
 
 La. Ad.Code 35:1.1727,
 
 Drug Which Affects Performance; Guarding Horse
 

 [3]
 

 ;
 

 La. Ad.Code 35:1.1729,
 
 State Chemist
 
 Report
 
 [4]
 
 ,
 

 La. Ad.Code 35:1.1735,
 
 Trainers Responsible for Condition of Horse
 

 [5]
 

 ;
 

 La. Ad.Code 35:1.1737,
 
 When Horse Found Druggedl
 

 [6]
 

 ,
 

 [sLa. Ad.Code 35:1.1505,
 
 Non-Steroidal and/or Anti-Inflammatory Medication.”
 

 Of these, La. Ad.Code 35:1.1735,
 
 Trainers Responsible for Condition of Horse,
 
 which makes the trainer the “absolute insurer of the condition of the horses he enters regardless of acts of third parties,” and further provides that, “[tjrainers and/or assistant trainers are presumed to know the rules of the commission,” is probably of greatest significance to this case. It echoes the language of La. R.S. 4:150 which declares trainers to be the “absolute insurer of the condition of the horses he enters regardless of acts of third parties.”
 

 Mr. Wilson does not deny that on April 17, 2008, he requested his veterinarian, Dr. Craig Schwartz, to administer a 30-day tranquilizer to Tru Nac, a horse he was training, but contends that he was not present when the horse was examined and medicated. He also denies knowing that the tranquilizer that the veterinarian administered was Fluphenazine. On May 5, 2008, less than twenty days later, Tru Nac ran in and won a race at Evangeline Downs The Evangeline Downs board of racing stewards issued ruling ED 16662 against Mr. Wilson, suspending him for six months and referred him to the LSRC for further action pursuant to La. Ad.Code 35:1.1795,
 
 Classification of Foreign Substances, supra,
 
 and La. Ad.Code 35:1.1797,
 
 Penalty Guidelines, supra.
 
 Mr. Wilson did not appeal the decision of the stewards to the LSRC, but it came before the LSRC having been referred by the stewards for further action.
 

 14After separate
 
 de novo
 
 hearings regarding each appellant, the LSRC affirmed the stewards’ findings and suspended both Mr. Wilson and Mr. Bourgeois for six months and imposed a fine of $1,500.00 on each. On December 8, 2008, both insti
 
 *855
 
 tuted appeals from the LSRC decisions in the 27th Judicial District Court for the Parish of St. Landry. On July 20, 2009, based on exceptions of venue and lack of subject matter jurisdiction, the case was transferred to the Civil District Court for the Parish of Orleans as the domicile of the LSRC. The district court did not take live testimony, relying instead on the transcripts of the hearings before the LSRC. Therefore, testimony referred to hereinafter is testimony received by the LSRC and not the district court.
 

 State Chemist Dr. Stephen Barker testified that the problem with Fluphenazine from a racing perspective (disregarding the risks of possible side effects) is that:
 

 [T]he ability to tranquilize a horse, to calm it down, to keep it from washing out, gives that horse an advantage over all of the other horses that do not contain such a substance.
 

 Dr. Barker also testified that Category I and II drugs are “banned.” He further testified that he felt that at no time would a thirty-day tranquilizer be proper “when the horse is stabled on a racetrack.” He went on to testify that tranquilizers such as Acepromazine which has a 24-hour withdrawal period are permitted.
 

 Mr. Brook Hawkins, a state steward at Evangeline Downs testified that it was his opinion that Fluphenizine was not a banned substance, but one that was prohibited in post-race test results. However, he testified further that on this issue he would defer to Dr. Barker as the expert. In any event, all agree that a post-race test result that is positive for Fluphenazine is prohibited.
 

 | ^Review of a final agency decision is governed by La. R.S. 49:964. An aggrieved party may appeal to the district court as was done in this case. La. R.S. 49:964. In hearing the appeal, the district court’s standard of review is set forth in La. R.S. 49:964 G:
 

 G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional or statutory provisions;
 

 (2) In excess of the statutory authority of the agency;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
 

 (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
 

 An agency’s action is presumed to be legitimate, and review of an agency decision is limited to determining the reasonableness of the action.
 
 Reaux v. La. Board of Medical Examiners,
 
 02-0906, p. 2 (La.App. 4 Cir. 5/21/03), 850 So.2d 723,726. As this Court explained:
 

 The standard of appellate review of a decision by an administrative agency is distinct from and narrower than Rthat
 
 *856
 
 which pertains to general appellate jurisdiction over civil and criminal appeals. Considerable latitude must be afforded administrative agencies to perform functions delegated to them under the law, and courts should not intervene unless the administrative agencies’s conduct is clearly unreasonable and arbitrary ... An administrative agency’s proceedings and decisions are presumed to be legitimate and correct, and the burden is on the appellant to demonstrate the grounds for reversal or modification.
 

 Id.
 

 Thus, the burden is on the appellants to show that the LSRC abused its discretion.
 

 In
 
 Cathey v. Louisiana State Racing Com’n,
 
 03-0923, p. 7 (La.App. 4 Cir. 9/24/03), 855 So.2d 414, 418, this Court explained the standard of review in a case arising out of a State Racing Commission decision:
 

 At the hearing to review the State Racing Commission’s decision, the trial court heard argument of counsel only. No live witness testimony was presented. The credibility calls by the State Racing Commission are therefore entitled to “due regard” as the Commission had the advantage of first-hand observation of the demeanor of witnesses and the reviewing court did not.
 
 Angelle v. Louisiana State Racing Commission,
 
 2002-0610, 2002-0611, p. 4 (La.App. 4 Cir. 9/25/02), 828 So.2d 1153, 1156. A complete reading of the trial court’s Reasons for Judgment in this case reveals that the trial court acknowledged the correct standard of review pursuant to La. R.S. 49:964(G)(6), but did not give due regard to the State Racing Commission’s determination of credibility issues. The trial court found credible the statements of Mr. Cathey and his witnesses, whereas the State Racing Commission did not. In light of the standard of review discussed herein, we find the decision of the trial court to be in error.
 

 Id.
 

 In
 
 Cathey,
 
 this Court reversed the trial court for failing to show “due regard” for the credibility calls of the State Racing Commission. In reviewing the appellate decision of the district court the standard of review is as follows:
 

 17When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Once a final judgment is rendered by the district court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court’s judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal.
 
 Maraist v. Alton Ochsner Medical Foundation,
 
 2002-2677 (La.App. 1 Cir. 5/26/04), 879 So.2d 815. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court.
 

 Smith v. State Dept. of Health and Hospitals,
 
 pp. 4-5 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, 739.
 

 Here, the facts are not disputed, and the preponderance of evidence supporting the Commission’s decision is unequivocal. Appellants, Mr. Bourgeois and Mr. Wilson, admitted under oath to directing and authorizing their horses, Diamondmint Deputy and Tru Nac, respectively, to be treated with a “30-day” tranquilizer. At the time, the horses were not entered to race. However, and knowing the horses had been treated with a “30-day” tranquilizer,
 
 *857
 
 appellants, Mr. Bourgeois and Mr. Wilson, entered the horses to compete and permitted them to race less than twenty days later. The burden is on the appellants to show that the trial judge abused her discretion.
 

 The trial court judgment, which incorporates written reasons for judgment, cites La. R.S. 4:150 which provides in paragraph “A” that the trainer is “responsible for and [is] the absolute insurer of the condition of the horse he enters regardless of the acts of third parties.” Therefore, assuming for purposes of argument, that the veterinarians in this case were the responsible parties in fact and that neither of the plaintiffs-trainers in this case were aware that Fluphenizine was |sadministered to their horses and/or was a prohibited substance, under La. R.S. 4:150 A they still were responsible parties as a matter of law regardless of what they may have known or their good faith.
 

 The trial court decision also cites the racing code, La. Ad.Code 35:1.1735 to the same effect and notes that this codal provision specifically creates a presumption that trainers know the rules of the Commission.
 

 However, in applying these standards in this case the trial court states that: “Unfortunately, in this case, unfair consequences result.” The trial court decision goes on to note that “the penalty imposed was the statutory minimum ...”
 

 Mr. Bourgeois admitted that he knew that Diamondmint Deputy was given a “30-day” tranquilizer and Mr. Wilson admitted that he specifically requested such a tranquilizer for Tru Nac.
 

 Holding the trainer responsible as the absolute insurer of the condition of a horse has long been recognized as essential to maintaining the integrity of the sport. As this Court explained:
 

 “[A] trainer voluntarily applies for a license, and upon approval by the Commission, he subjects himself to certain terms and conditions such as the absolute insurer rule which might be inappropriate in other situations. The relationship between the Commission and trainers, owners, jockeys and others is analogous to a contractual commitment with each party agreeing not to race a horse that has been stimulated by drugs, no matter who administers the drugs.” [Citations omitted.]
 

 Arrington v. La. State Racing Commission,
 
 482 So.2d 200, 202 (La.App. 4 Cir.1986).
 

 |nIn
 
 Owens v. La. State Racing Commission,
 
 466 So.2d 764 (La.App. 4 Cir.1985), this Court adopted and quoted the reasoning of
 
 Briley v. Louisiana State Racing Commission,
 
 410 So.2d 802, 805-806 (La.App. 3 Cir.1982), as follows:
 

 The governmental interest is to insure honest and safe races as well as to protect the integrity of the industry and its source of revenues generated from the activity. The burden being placed on the trainers, who have control of the horses before and after the race, is not so onerous as to be unconstitutional. When one weighs the control of the trainer, his grooms and jockey and their ability to prevent tampering with the horse, with the safety and integrity of the industry and public fisc, no one is in a better position to bear the obligation than the trainer. A substantial governmental purpose is served. To merely disqualify the horse and not penalize the trainer would not, in all likelihood, give much impetus in preventing the drugging of horses. However harsh the rule, it is applied equally to all trainers and therefore is not unconstitutional in its application.
 

 
 *858
 

 Id. Owens
 
 was cited by this Court and followed in
 
 Segura v. La. State Racing Commission,
 
 577 So.2d 1031, 1034 (La.App. 4 Cir.1991).
 

 The use of a stimulant, depressant, or anesthetic in a manner that might affect or tend to affect the racing performance of a horse is prohibited. La.Ad.Code 35:1.1717. The presence of a Category II medication in a post-race analysis reported by the state chemist is prima facie evidence that there has been a violation of the Rules of Racing. Fluphenazine is a Category II medication. State Chemist Dr. Stephen Barker testified that the trainers should never have authorized the horses be treated with a 30-day tranquilizer if the trainers intended to run the horses in fourteen days. Dr. Barker explained that Fluphe-nazine is classified as a Category II substance because (1) of its high potential for abuse and (2) known pharmacological qualities as a long lasting tranquilizer. The potential for abuse, Dr. Barker testified, lies in the drug’s calming effect, “[sjedat-ing nervous- horses | ingives those horses an advantage over other, lets say, nervous horses that didn’t receive it or just over other horses in general. It does tend to focus their attention, keeps them from washing out, so that they have more stamina.”
 

 Knowingly racing horses less than twenty days after the administration of a drug which was known to be effective for at least three weeks was a valid factor supporting the LSRC’s decision not to reduce the penalty below the recommended minimum.
 

 The Commission’s deliberations are in the record. Commissioner Payton Coving-ton expressed the view that the interest of racing is best served in affirming the responsibility placed upon trainers as the absolute insurer of the condition of horses entered to race. Thereafter, Commissioner Covington made a motion that Bourgeois be suspended for six months and fined $1,500. As the motion was being made, Commissioner Covington opined: “Isn’t that the minimum we can do?” To which Mr. Charles Gardiner, Executive Director of the Commission, responded: “That is the guidelines. That is what the guidelines say, but, of course, the commission is at its pleasure to do what it want[s] to do.”
 

 Having been expressly admonished that the minimum penalty provided by the Rules of Racing was merely a guideline, Commissioner Kenneth Romero promptly responded, “I think we ought to accept the steward’s ruling and fine him ...” This sentiment was echoed by Commissioner Brian Krantz, “I think the minimum guideline is in line with a motion that I could accept.”
 

 Therefore, the record does not support the argument that the LSRC failed to understand that they could deviate from the penalty mínimums.
 

 |nWhile La. Ad.Code 35:1.1797 requires the Commissioners to “state in their ruling” any mitigating factors that they find, there is no requirement that they set forth the absence of any mitigating factors.
 

 Therefore, considering that the record shows as undisputed facts that the post-race test results were positive for Flu-phenizine; that the appellants requested and/or knew of the administration of a 30-day tranquilizer within less than three weeks of the races in question; that Flu-phenazine is a Category II substance; and that, as a matter of law, the appellants as trainers are the absolute insurers of the condition of the horses they race, regardless of the acts of third parties, we can find no basis in the record to find that either the district court or the LSRC abused their discretion or acted in any arbitrary
 
 *859
 
 or capricious manner in imposing the recommended minimum sentence under the guidelines. To put it another way, we can find no basis in the record to conclude that either the district court or the LSRC abused their discretion or acted in any arbitrary or capricious manner in failing to deviate downward from the recommended minimum set forth in the guidelines.
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . This regulation states in pertinent part that: B. Known and identified prohibited drugs and substances are classified and listed according to their appropriate class as defined in the Association of Racing Commissioners International, Inc. Drug Testing and Quality Assurance Program's
 
 Uniform Classification Guidelines for Foreign Substances.
 

 [2]
 

 . This regulation states in pertinent part that:
 

 A. Upon finding a violation by a permittee of prohibited medication rules, of prohibited substance rules, or of improper or excessive use of permitted medications, the stewards, or the commission, shall consider the classification level as set forth in § 1795 and will, in the absence of mitigating or aggravating circumstances, endeavor to impose penalties and disciplinary measures consistent with the recommended guidelines contained herein. Whenever a majority of the stewards find or conclude that there are mitigating or aggravating circumstances, they should so state in their ruling such finding or conclusion, and should impose the penalty which they find is appropriate under the circumstances to the extent of
 
 *854
 
 their authority or, if necessary, refer the matter to the commission with specific recommendation for further action.
 

 B. The recommended guidelines for a violation of each classification level are as follows:
 

 [[Image here]]
 

 2.Class II: suspension of license for a period of not less than six months and not more than one year and a fine of not less than $1,500 and not more than $2,500. The purse shall be redistributed.
 

 [3]
 

 .No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of any drug no permitted by Chapter 15 to any horse to be entered or entered for a race. Every owner, trainer or groom must guard, or cause to be guarded, each horse owned, trained or attended by him in such manner as to prevent any person or persons from administering to the horse, by any method, any drug, not permitted by Chapter 15.
 

 [4]
 

 . This regulation states in pertinent part that: [The State Chemist report] shall ... be taken as prima facie evidence that the owner and/or trainer and/or groom has been negligent in handling the horse.
 

 [5]
 

 . This regulation states that: A. The trainer and/or assistant trainer shall be responsible for and be the absolute insurer of the condition of the horses he enters regardless of acts of third parties. Trainers and/or assistant trainers are presumed to know the rules of the commission.
 

 [6]
 

 . This regulation states that the trainer may be penalized "if the stewards conclude that the prohibited drug or substance ... could have produced analgesia in, stimulated or depressed the horse ...”