2016-0295 (La.App. 4 Cir. 12/14/16)

**Marion VINCENT**

v.

**Jared MUNSTER, Director Department of Safety and Permits**

**NO. 2016–CA–0295**

Court of Appeal of Louisiana, Fourth Circuit.

DECEMBER 14, 2016

Rehearing Denied December 28, 2016

Kevin C. O'Bryon, O'BRYON & SCHNABEL, PLC, 1010 Common Street, Suite 1950, New Orleans, LA 70112, COUNSEL FOR PLAINTIFF/APPELLANT

Rebecca H. Dietz, City Attorney, Mark D. Macnamara, Deputy City Attorney, CITY OF NEW ORLEANS, 1300 Perdido Street, Suite 5E03, New Orleans, LA 70112, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Rosemary Ledet)

Judge Rosemary Ledet

This is an administrative proceeding. The plaintiff, Marion Vincent, appeals the trial court's judgment affirming the revocations her certificate of public necessity and convenience ("CPNC") and permit to operate a taxicab by the Director of the Department of Safety and Permits ("the Director"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

After Ms. Vincent began operating under her CPNC and permit, she received multiple notices of violations of the New Orleans City Code ("the City Code") from the Taxicab and For Hire Vehicles Bureau ("the Bureau"),[1] including the following:

- A notice dated October 20, 2014 for violating City Code Section 162-659 ("credit/debit card acceptance machines; alternative systems");[2]

- A notice dated June 1, 2015 for violating City Code Sections 162-659; 162-89 ("possession of valid permit"); 162-446 ("driver's good conduct"); and 162-380 ("criteria and regulation of inspection standards"). The notice stated that these violations occurred on May 20, 2015 and that a hearing would be held on July 30, 2015;

- A notice dated June 22, 2015 for violating City Code Sections 162-89, 162-446, 162-659, and 162-380. The notice stated that these violations occurred on May 20, 2015 and that a hearing would be held on July 23, 2015; and

---

1. The Bureau is a division of the Department of Safety and Permits which regulates the licensing and inspection of all taxicabs and for hire vehicles within the City of New Orleans.

2. The record contains only the first page of the notice. In her appellate brief, Ms. Vincent claims that a hearing on this citation occurred on January 8, 2015. The record, however, is devoid of any recordings or transcripts of this hearing.

- A notice dated July 30, 2015, for violating City Code Sections 162–89, 162–446, 162–659, and 162–380. The notice stated these violations occurred on May 20, 2015 and that a hearing would be held on August 13, 2015.[3]

At the August 13, 2015 hearing, three witnesses—Ms. Skinner[4] and Ms. Anderson, both investigators for the Bureau, and Ms. Vincent—testified. Ms. Skinner testified that she issued Ms. Vincent a citation in 2014 for violating the credit/debit card machine requirement. Ms. Anderson testified that she issued Ms. Vincent the May 20, 2015 citation for multiple City Code violations. On August 19, 2015, the Bureau revoked Ms. Vincent's CPNC and permit due to violations of City Code Sections 162–89 ("possession of valid permit"), 162–380 ("criteria and regulation of inspection standards"), and 162–659 ("credit/debit card acceptance machines; alternative systems"). On September 18, 2015, Ms. Vincent filed a petition for judicial review and for injunctive relief in Orleans Parish Civil District Court ("CDC"). On December 22, 2015, she filed a separate Complaint for Injunction to prohibit the Director from revoking her CPNC and permit.

On January 6, 2016, following a hearing, the trial court denied Ms. Vincent's injunction. On January 12, 2016, the trial court heard Ms. Vincent's petition for the judicial review of the administrative adjudication. At the conclusion of the hearing, the trial court affirmed the Director's decision to revoke her CPNC and permit. The trial court stated that the Director's "finding was not arbitrary or capricious or characterized by an abuse of discretion or clearly a warranted exercise of its discretion." The trial court specifically noted that Ms. Vincent testified at the administrative hearing that she "did not use the VeriFone machine, as required, which shows a violation." Ms. Vincent appealed.

## STANDARD OF REVIEW

The Administrative Procedure Act ("APA") provides for review of an administrative agency's decision. See La. R.S. 49:964. This court summarized the standard of review under the APA in Clark v. Louisiana State Racing Comm'n, 12–1049, pp. 9–10 (La.App. 4 Cir. 12/12/12), 104 So.3d 820, 826–27, as follows:

> A party aggrieved by a final agency decision in an adjudication proceeding is entitled to have that decision reviewed initially by the district court of the parish in which the agency is located. La. R.S. 49:964(A)(1) and (B). The district court acts in the capacity of an intermediate appellate court. A party aggrieved by the district court's decision is entitled to appeal to the appropriate appellate court as in other civil cases. La. R.S. 49:965. When an appellate court reviews the district court's judgment, no deference is owed by the appellate court to the district court's fact findings or legal conclusions, " 'just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court.' " Bourgeois v. Louisiana State Racing Comm'n, 10–0573, p. 7 (La.App. 4 Cir.

---

3. Although the notices state that hearings were set for July 23 and 30, 2015, the record is silent regarding whether those hearings were held.

4. Ms. Vincent objected to Ms. Skinner's testimony and alleged that her testimony involved an unrelated case from 2014. Mr. Munster, as adjudicator, overruled Ms. Vincent's objection and explained that both violations would be addressed during the current hearing.

11/12/10), 51 So.3d 851, 856 (quoting *Smith v. State, Dep't of Health and Hospitals*, 39,368, pp. 4–5 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, 739).

The standard of appellate review of an administrative agency's decision is distinct from and narrower than that which applies to ordinary civil and criminal appeals. *Reaux v. Louisiana Bd. of Med. Examiners*, 02–0906, p. 3 (La.App. 4 Cir. 5/21/03), 850 So.2d 723, 726. The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G) of the Administrative Procedure Act ("APA"). *Armstrong v. Louisiana State Bd. of Medical Examiners*, 03–1241, pp. 9–11 (La.App. 4 Cir. 2/18/04), 868 So.2d 830, 837–38.

*Id.*; *see also DMK Acquisitions & Properties, L.L.C. v. City of New Orleans*, 13–0405, p. 8 (La.App. 4 Cir. 9/18/13), 124 So.3d 1157, 1163; *Johnson v. Strain*, 15–0714, p. 4–5 (La.App. 1 Cir. 11/6/15), 183 So.3d 562, 564.

Furthermore, this court has held that "[a] reviewing court should not intervene unless the administrative agencies' conduct is clearly unreasonable and arbitrary." *Davis v. State Bd. of Certified Pub. Accountants of Louisiana*, 13–0514, p. 6 (La.App. 4 Cir. 12/18/13), 131 So.3d 391, 395 (citing *Bourgeois*, 10–0573 at p. 6, 51 So.3d at 856). "An administrative agency's

proceedings and decisions are presumed to be legitimate and correct, and the burden is on the appellant to demonstrate the grounds for reversal or modification." *Bourgeois, supra* (quoting *Reaux v. Louisiana Bd. Of Med. Examiners*, 02–0906, p. 2 (La.App. 4 Cir. 5/21/03), 850 So.2d 723, 726); *see also Vieux Carre Property Owners v. City of New Orleans*, 14–0825, p. 7 (La.App. 4 Cir. 4/15/15), ── So.3d ──, ──, 2015 WL 1736870, p. *7 (*unpub.*), *writ denied*, 15–1147 (La. 9/18/15), 178 So.3d 149. ("The aggrieved party bears the burden of showing that the BZA [Board of Zoning Adjustments] decision is arbitrary, capricious, or manifestly erroneous in light of substantial evidence in the record. Absent this showing, the reviewing court may not substitute its own judgment for that of the BZA.") (internal citations omitted).

## DISCUSSION

On appeal, Ms. Vincent contends that the revocations of her CPNC and permit were not supported by a preponderance of the evidence. She claims that the evidence establishes that she complied with the City Code requirements to the extent possible given that the Bureau attempted to prevent her from remaining in compliance. She further contends that the revocations were excessive punishment and an abuse of discretion.

Although Ms. Vincent raises several issues on appeal,[5] we organize our analysis

---

5. On appeal, Ms. Vincent asserts the following seven assignments of error:
   1. Substantively, the revocation was not supported and sustainable by a preponderance of the evidence.
   2. The penalty of revocation was arbitrary, capricious and characterized by an abuse of discretion, or clearly unwarranted exercise of discretion.
   3. The notice of the administrative hearing was procedurally deficient in that the Taxicab Bureau failed to give the licensee prior opportunity to show compliance with all lawful requirements for

the retention of her license. In fact, the Taxicab Bureau actively prevented the licensee's compliance.
   4. The administrative adjudication was in violation of constitutional guarantees of equal protection and due process insofar as the Director of the Department of Public Safety has unfettered discretion on revocations, left unregulated by any rule of action.
   5. The action was in violation of constitutional guarantees of equal protection and due process in that the conduct

around the following four issues: (i) driver's permit; (ii) inspection; (iii) credit/debit card system; and (iv) statutory requirements.[6]

### [6](i)  Driver's permit

■ Vehicles for hire in the City of New Orleans are governed by Chapter 162 of the City Code. According to the City Code, the Director is authorized to suspend, for a period not exceeding ninety days, or to revoke a driver's permit and a CPNC. *See* City Code Sections 162–243(a), 162–248, and 162–249. A driver's permit or CPNC may be suspended or revoked when, after an administrative hearing, the director finds "that the holder of the permit or CPNC has failed to comply with the provisions of this chapter [Chapter 162]." City Code Section 162–243(a)(2).

City Code Section 162–89 requires that a driver of a for hire vehicle shall carry a driver's permit at all times while operating the vehicle.[7] Section 162–89 further provides that "[f]or the purpose of this article, every permit which is under suspension or which has been revoked as provided in this chapter shall be considered invalid unless and until the same is reinstated."

At the administrative hearing, Ms. Vincent testified that she was allowed to operate a taxicab based on a handwritten note on the side of an outstanding citation that stated "allowed to operate 2/26/15."[8] Ms. Vincent further testified that although she timely applied to renew her driver's permit, the Bureau refused to release her permit until a decision was made on the October 2014 citation. Citing La. R.S. 49:961(B),[9] Ms. Vincent contends that her

prescribed is unconstitutionally vague and ambiguous.

6. The revocation was in violation of constitutional guarantees of equal protection and due process in that the head of the Department cannot be an impartial arbiter of the revocation matters coming before him for decision, where the witnesses are his employees and the prosecutor is his attorney.

7. The revocation was in violation of the statutory requirements in that the person making the decision was not an administrative law judge, as required.

**6.** Although Ms. Vincent contends that multiple sections of the City Code—including Sections 162–243, 162–446, and 162–98—violate "constitutional guarantees of equal protection and due process," these issues were not specially pleaded. *See AAA Safety, Inc. v. Dep't of Pub. Safety & Corr.*, 13–2171, p. 9, n. 2 (La. App. 1 Cir. 7/11/14), 146 So.3d 709, 715 (finding that "a proper challenge to the constitutionality of a statute should first be brought before the district court sitting as a court of original jurisdiction, not as an appellate court," which is reviewing the determination of an administrative tribunal); *State v. Smith,* 13–2318, p. 6, n. 4 (La. 1/28/14), 144 So.3d 867, 872 (holding "that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized, these procedural rules exist to afford interest-

ed parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute"); *State v. Hatton,* 07–2377, p. 19 (La. 7/1/08), 985 So.2d 709, 722 (declining to consider the unconstitutionality of a statute that was raised for the first time on appeal). We decline to consider these issues.

**7.** City Code Section 162–1 defines a driver's permit as "the license granted by the department of safety and permits authorizing an individual to drive a vehicle that bears a valid certificate of public necessity and convenience number."

**8.** The citation is contained in the record; however, the only information legible is the handwritten note. In her appellate brief, Ms. Vincent stated that Karen Thibodeaux, an employee of the Bureau, wrote the note on the ticket.

**9.** La. R.S. 49:961(B) provides as follows:

When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited,

application for renewal of her CPNC and permit preserved her "licensed status" until the application was officially determined.

Ms. Anderson testified that when she approached Ms. Vincent's taxicab on May 20, 2015, Ms. Vincent was irate and refused to cooperate; Ms. Anderson had to call for assistance. Ms. Anderson acknowledged that Ms. Vincent presented the citation with the handwritten note but stated that Ms. Vincent lacked a valid permit. The record contains a photograph that depicts that her permit expired on February 22, 2015. The record also contains a receipt for the renewal of a driver's permit and a for-hire permit application both dated February 23, 2015.

Given that Ms. Vincent applied for renewal of her permit the day after it expired, she did not submit a timely application as required by La. R.S. 49:961(B). The evidence thus supports a finding that Ms. Vincent lacked a valid driver's permit.

_₈(ii)_  *Inspection*

██  City Code Section 162–380(6)(i)(d) requires that "[a]ll motor vehicles must have a current and valid safety inspection sticker (brake tag)."

At the administrative hearing, Ms. Anderson testified that on May 20, 2015, Ms. Vincent failed to have a valid inspection sticker. Ms. Anderson also identified photographs that she took of the taxicab in question depicting the absence of an inspection sticker. Ms. Vincent testified that although it was not visible in Ms. Anderson's photograph, she had an inspection sticker inside the taxicab.[10] Ms. Vincent testified that she paid the necessary fees, but due to a pending decision from a

citation in October 2014, the Bureau withheld her CPNC, which prevented her from participating in an inspection.

An inspection sheet in the record reveals that Ms. Vincent failed inspection on August 23, 2014, due to various issues with her taxicab and that she was required to return for re-inspection on September 7, 2014. Ms. Vincent subsequently appeared for re-inspection and passed. The inspection sheet reveals that her driver's permit expired on February 22, 2015, and that her inspection sticker expired on March 20, 2015. The record further reflects that Ms. Vincent attempted to have her taxicab inspected on the day of the administrative hearing. According to the inspection sheet, Ms. Vincent was not allowed to operate her vehicle. On the inspection sheet, the following problems were listed: refusal to pay _₉delinquent fees, no valid permit, noncompliant credit card machine, and camera not connecting. The evidence thus supports a finding that Ms. Vincent did not have a valid inspection sticker.

*(iii)*  *Credit/Debit Card System*

██  City Code Section 162–659(a) requires that "[a]ll taxicabs shall be equipped with a bureau-approved and fully functioning credit/debit card acceptance machine." The City Code also requires that a passenger information monitor (PIM) to be installed in all taxicabs and connected directly to the taximeter via a hard wire. Section 162–659(a)(2). "Any licensed CPNC holder may also petition the bureau for approval of any alternative credit/debit card acceptance systems. The Taxi Cab Bureau shall adopt rules establishing evaluation criteria for approval or

---

until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

10.  Ms. Vincent testified at the administrative hearing that she had a photograph showing an inspection sticker on her taxicab. It is unclear, however, whether this photograph was submitted into evidence.

denial; and procedures relative thereto." City Code Section 162–659(b).

Ms. Vincent contends that the record is insufficient to support a finding that she failed to have the required credit/debit card system. She contends that Ms. Skinner issued a citation without observing the equipment in her taxicab. She further contends that although Ms. Anderson photographed the equipment, she failed to test whether it was working properly. Ms. Vincent contends that she passed inspection in September 2014; and that she maintained the required equipment in her taxicab at all times thereafter.

At the administrative hearing, Ms. Skinner testified that a VeriFone representative advised the Bureau that Ms. Vincent was not using her credit/debit card machine.[11] On cross-examination, Ms. Skinner testified that she did not speak to VeriFone regarding the 2014 violation; rather, Ms. Thibodeaux notified her. Ms. Skinner testified that she reviewed Ms. Vincent's VeriFone records before issuing the citation. Ms. Anderson also testified that Ms. Vincent failed to have a valid credit/debit card machine when Ms. Anderson issued the May 20, 2015 citation. Ms. Anderson identified photographs that she took of the taxicab in question depicting the lack of a proper credit/debit card machine.

Ms. Vincent testified that she had a credit card machine in her taxicab. She acknowledged that she used a handheld device that was not hardwired to her taxicab. On cross-examination, when asked about her credit card system, Ms. Vincent testified "I don't use VeriFone, but I am not a cash cab. I am not a cash cab—have never been—just an all cash cab.... I don't work with VeriFone and I'm not going to incriminate myself. I plead the fifth on that." She also testified that she has maintained a credit card system with "Merchant Accounts" since around 1992.[12] She further testified that she did not have a PIMs system, but she explained that the Bureau no longer gives monitoring systems.

Given her admission to failing to use a Bureau-approved credit/debit card system and a PIMs system, the record supports a finding that Ms. Vincent violated City Code Section 162–659. The evidence thus supports a finding that Ms. Vincent failed to comply with the City Code. Accordingly, the Director's finding was not arbitrary or capricious. As noted earlier, the Director of the Department of Safety and Permits may revoke a driver's permit or CPNC if the holder has failed to comply with Chapter 162 of the City Code. Given Ms. Vincent's violations of the City Code, the Director did not abuse his discretion by revoking Ms. Vincent's CPNC and permit. Ms. Vincent's assignments of error are thus without merit.

### (iv) Statutory requirements

Ms. Vincent contends that the revocations of her CPNC and permit should be reversed because the Bureau failed to follow certain statutory requirements. First, she contends that the Bureau violated La.

11. The record contains an email dated October 2, 2014 from Donald Guillet, a VeriFone employee, to Ms. Thibodeaux. In the email, Mr. Guillet cautions Ms. Thibodeaux that Ms. Vincent may be violating city regulations. He states that the transfer of the CPNC to Ms. Vincent may not have occurred, that VeriFone's system information indicates that Ms. Vincent was not taking credit card transactions, and that she may not be covered by insurance and monitoring. Mr. Guillet requested that Ms. Thibodeaux investigate the matter further.

12. In her Complaint for Injunction filed in CDC, Ms. Vincent attached a list of approved credit/debit card vendors from the City, which included Creative Mobile Technologies, Dialie/Passdroid, Taxi Magic/Ride Charge, and VeriFone Transportation.

R.S. 49:961(C) by failing to give her the opportunity to show compliance with lawful requirements.[13] In support she cites *Louisiana State Bd. of Medical Examiners v. Bertucci*, 593 So.2d 798 (La. App. 4th Cir. 1992), in which this court reversed an agency's decision revoking a medical license.

In *Bertucci*, we noted that "it is apparent that [La. R.S. 49:961] Subsection (C) requires an additional step. That is, the agency must give the licensee an opportunity, prior to the institution of formal proceedings, to show that the actions complained of do not violate the law or agency rules." *Bertucci*, 593 So.2d 798, 801 (footnote omitted). This court, however, also noted that the "failure to object constitutes a waiver of his right to the additional procedural step of R.S. 49:961(C)." *Id.*[14]

In this case, Ms. Vincent did not object to the Bureau's failure to give her an opportunity to show compliance until the January 12, 2016 appeal hearing in CDC.

She participated in the administrative hearing before the Director. Ms. Vincent also testified at the administrative hearing that she visited the Bureau's office nineteen times on a separate matter regarding the reissuance of her CPNC and five times regarding this matter. The record, however, is devoid of any evidence that Ms. Vincent attempted to show compliance at any of these visits. Furthermore, the record does not contain evidence that Ms. Vincent complied with the City Code requirements regarding the driver's permit, inspection, and the credit/debit card machine.

The other statutory requirement Ms. Vincent contends was violated is La. R.S. 49:994(A).[15] In support, she contends that Mr. Munster is not qualified to be an administrative law judge because he is neither licensed to practice law in Louisiana nor has he engaged in the practice of law for five years before his appointment as administrative law judge. Ms. Vincent,

---

**13.** La. R.S. 49:961(C) provides as follows:

No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

**14.** This court in *Reaux, supra,* also stated as follows:

The apparent purpose of La. R.S. 49:961(c) is to give the licensee an opportunity to address the Board's concerns *before* the proceedings against the licensee are substantially underway so that, in cases in which the licensee can convince the Board at that point that the Board's concerns are

unjustified, the licensee will never be subjected to most of the burdens of Board proceedings. Dr. Reaux did not object before the Board to the alleged lack of a "961(c) meeting" until shortly before the Board hearing, after the completion of substantial Board proceedings, at which point much of the apparent purpose of La. R.S. 49:961(c) could no longer be accomplished. Further, having a "961(c) meeting" on the eve of a long-scheduled hearing was apt to be a vain and useless act. This procedural issue was raised too late in the proceedings. 02–0906 at pp. 12–13, 850 So.2d at 731–32. (Emphasis supplied).

**15.** La. R.S. 49:994(A) provides as follows:

The director of the division shall employ the administrative law judges for the division, each of whom shall have the following qualifications:(1) An administrative law judge shall be a resident of Louisiana.(2) An administrative law judge shall be licensed to practice law in Louisiana.(3) An administrative law judge shall have been engaged in the actual practice of law for at least five years prior to his appointment.

however, fails to cite any authority in support of this contention.

The City Code grants the Director of the Department of Safety and Permits the authority to "[r]evoke, suspend, or cancel any permit which has been violated." Section 4–702(4). Furthermore, City Code Section 162–98(a) provides as follows:

> The director of the department of safety and permits or a duly designated agent may deny or revoke the issuance of a driver's permit and/or a CPNC whenever... the director shall determine that the applicant or holder is in violation of this chapter. The director shall conduct a hearing in accordance with the provisions of R.S. 49:951 et seq.

*See also* Section 162–248(a) (noting that "[t]he director shall conduct a hearing in accordance with the provisions of R.S. 49:951 et seq.").

When the Louisiana Constitution of 1974 was ratified, Home Rule Charters in effect remained in effect by virtue of La. Const. Art. VI, § 4.[16] Under this constitutional provision, "all local governmental powers in effect under the home rule charters when the 1974 Constitution was adopted" were retained. *Johnson v. Carter*, 00–0029, p. 4 (La.App. 4 Cir. 6/28/00), 767 So.2d 790, 792 (citing *City of New Orleans v. Board of Comm'rs of Orleans Levee Dist.*, 93–0690, p. 17 (La. 7/5/94), 640 So.2d 237, 248). This constitutional provision also grants pre-existing home rule charter cities the power to amend their charters, indicating that "those local governments may add powers and delete limitations upon their

powers, except as inconsistent with the 1974 Constitution." *Johnson*, 00–0029 at pp. 4–5, 767 So.2d at 792. According to the City Code, Mr. Munster has the authority to conduct administrative hearings regarding the revocation of permits and CPNCs. This assignment of error is thus without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court affirming the Bureau's revocation of Ms. Vincent's CPNC and permit to operate a taxicab is affirmed.

**AFFIRMED**

2016-0145 (La.App. 4 Cir. 12/14/16)

---

16.  La. Const. Art. VI, § 4 provides as follows:
    Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such

a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.