PATIN FAMILY TRUST          *        NO. 2025-CA-0420

VERSUS                    *

                                 COURT OF APPEAL

THE CITY OF NEW          *
ORLEANS; THE
DEPARTMENT OF CODE     *        FOURTH CIRCUIT
ENFORCEMENT; ANTHONY
T. DAVIS, IN HIS CAPACITY  * * * * * * *    STATE OF LOUISIANA
AS DIRECTOR OF CODE
ENFORCEMENT; TAMMIE
JACKSON, IN HER CAPACITY
AS THE DIRECTOR OF THE
DEPARTMENT OF SAFETY
AND PERMITS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-07381, DIVISION "E-7"
Honorable Omar Mason, Judge
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Sharonda R. Williams
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

COUNSEL FOR PLAINTIFF/APPELLANT

Max V. Camp
Shawn Lindsay
Corwin St. Raymond
Colette T. White
Donesia D. Turner
OFFICE OF THE CITY ATTORNEY
1300 Perdido Street
New Orleans, Louisiana 70112

COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**March 4, 2026**

In this case, a property owner appeals the district court's denial of its Petition for Writ of Review of the administrative judgment that decreed an emergency demolition of the appellant's property.

***History of the Administrative Proceeding***

We begin our review with a chronological account of the interactions between the owner and the various agencies and representatives of the City of New Orleans. For ease of reference, all city agencies will be referred to as the "City" unless differentiation is necessary.

The Patin Family Trust ("Appellant") owned a building at 537 S. Claiborne Avenue ("the Building"). The Building was used to store equipment and materials used in Appellant's construction business. Appellant also leased space for advertising on its wall and on an elevated billboard, which is a separate stand-alone structure.

On November 4, 2022, Appellant obtained a permit to perform structural renovation of its Building. The application for the permit was accompanied by a letter dated November 2, 2022, from Elias Hage ("Hage"), a certified professional

engineer.  The letter informed the Department of Safety and Permits ("DSP") that the roof needed complete replacement but the remainder was sound and could be repaired.

On January 5 and January 8, 2024, Jason Chaffin ("Chaffin") of the Code Enforcement Department inspected the Building.  Chaffin noted eight items that he determined to be violations of City ordinances. The violations observed by Chaffin, according to his report, included accumulated trash, weeds and plant growth greater than 10 inches; fences and wall in disrepair; graffiti; Building address not displayed; structure deteriorated, not structurally sound; exterior walls deteriorated, loose, missing, rotting materials, not weatherproof, open holes and breaks; and deteriorated, leaking roof.

It is worth noting that the Building is virtually inaccessible by the public.  It has five sides and is enclosed by fencing except for walls that have no openings or entrances.  The City admits that neither Chaffin or any other City representative inspected the roof or inside the Building.  All inspections were made from outside the fence.  The only inspections made of the internal structure and roof were made by Hage.  Hage is the only engineer who inspected the Building.  Chaffin's report was not delivered to Appellant.

On April 18, 2024, Appellant made repairs to the roof based on recommendations Hage made after his initial inspection in 2022.  The repairs were made before Appellant had any knowledge of the ongoing effort the City was making to demolish the Building.  The repairs were made before Appellant had any notice of the January inspection and before the City made its internal decision to demolish the Building citing roof deficiencies among other things.

The City's Code Enforcement Department made an Imminent Danger Determination for Emergency Abatement on May 8, 2024. This is an internal document that was not delivered to Appellant, nor were its contents made known to it. In a section of the form provided for making such a determination, the department wrote, "Exterior walls missing, studs exposed, roof damage, graffiti on property."

On May 9, 2024, the City issued a notice to Durr Heavy Construction, L.L.C. to proceed with demolition.[1]

After the City's internal decision to demolish the property and after issuing the notice to the contractor, the City mailed a Notice of Administrative Hearing to Appellant and posted the notice of that meeting on the Building on May 23, 2024. The meeting was set for July 11, 2024. As of May 29, 2024, the date that Appellant actually received the administrative meeting notice by mail, he had no information regarding the City's parallel internal proceeding to demolish the Building. The administrative meeting notice identified the same violations noted on Chaffin's January inspection reports. The notice form provided in the record does not describe specific violations to the owner. It contains a list of provisions from the Code of the City of New Orleans ("CCNO") from which one must interpret a violation of the ordinance.

The City posted a Notice of Emergency Demolition on the Building on June 7, 2024.[2] The notice was posted approximately one week after Appellant received the mailed notice of the administrative hearing.

---

[1] The notice refers to demolition of the main building only, but the contractor also demolished the elevated billboard structure.
[2] The record is unclear regarding the actual date on which the demolition notice was posted. The notice bears a date of June 7, 2024, but the date and time stamp on the photo used as proof of the notice shows June 11, 2024.

On July 9, 2024, the City issued a demolition permit to a contractor who had a standing contract with the City to perform emergency demolitions. The permit was issued two days before the administrative hearing at which Appellant expected to defend itself against the violations alleged by the City. Appellant did not receive a copy of the demolition permit.

In preparation for the meeting, Appellant again engaged Elias to inspect and report on the condition of the Building. Elias's letter, dated June 20, 2024, offers the opinion that, "Based on my visual inspection of the remaining portion of the Building and that of the billboard structure within the existing building footprint all look to be in my opinion structurally sound." Elias's report also notes that the roof has been repaired.

The City held an administrative hearing on July 11, 2024, and issued a judgment finding Appellant "guilty" of violation of eight sections of the Code of the City of New Orleans. In a column of the judgment marked "Corrections," Appellant was ordered to remove trash and debris, cut and remove weeds and plant growth, maintain fences and walls in good condition, apply a visible address to the Building, maintain the structure in good condition, maintain the exterior walls in good condition, and repair or replace the roof. In addition, there was an order to "maintain in good condition" some unspecified part of the property that had been adjudicated as "defaced." On a recording of the hearing that is barely audible, someone seems to explain to Appellant that the defacement is a single item of spray-painted graffiti on the Building. Below the columnar instructions, the judgment included the following decretal language:

> IT IS FURTHER ORDERED based on the aforementioned violation(s), the facts establish the property unsafe to a person or property; a fire hazard; a hazard to the public health; a public

4

nuisance; dangerous to a person or property because of the violations which justify abatement by demolition, and DEMOLITION IS HEREBY ORDERED.

Based on the aforementioned violation(s) is of such a nature that the unoccupied property creates an uninhabitable and hazardous condition that threatens the public health and safety and that the property is therefore deemed a blight and public nuisance, pursuant to Sections 26-236 and 26-237 of the Code of the city of New Orleans.

. . .

You are hereby ordered to abate all of the aforementioned violation(s) in the manner provided herein within thirty (30) days of the mailing of this order.

IT IS ORDERED you are commanded to correct the above violations and remit $2,525.00 within thirty (30) days of the mailing of this judgment.

You are hereby notified that each day a violation continues after the ordered abatement period concludes shall be deemed a separate offense, subjecting you to an additional penalty of $500.00 per day, for each day the aforementioned violation(s) continue. The daily penalties shall begin accruing the day after the abatement period expires and will continue accruing daily, per violation, for one year, or until the violations are corrected, whichever occurs first. A violation is not deemed to be corrected until you submit proof of compliance with the ordered abatement measure as provided herein to the appropriate enforcement agency.

The first two paragraphs above are distinctly at odds with the three paragraphs that follow. On the one hand, the City is informing the property owner that the Building is hazardous and will be demolished. On the same page of the judgment, the City imposes on the owner the obligation to repair the violations noted in the judgment or incur daily fines of $500 per day.

In response to Appellant's petition for writ, the City filed a pleading entitled, Return to Writ of Certiorari (the "Return"). Ninety-two exhibits were attached to and filed with the pleading. A certification attached to the Return declares that the documents are "the complete record reviewed by the Code Enforcement Division"

relative to the property address of the Building.  According to the Return, the City had reviewed Elias's June 20, 2024 report.  None of the City's complete record found any imminent danger structurally or otherwise pertaining to the billboard structure, which is a separate construction from the Building. The administrative judgment does not order the demolition of the billboard structure nor does it instruct the demolition contractor to preserve it.

On July 31, 2024, the City demolished the main Building and the billboard structures.  This was 10 days before the expiration of the 30 days provided for correction in the administrative judgment.

Appellant filed a Verified Petition for Writ of Review Appealing Judgment of Demolition in district court on August 10, 2024.  The district court issued its judgment on April 16, 2025, denying the petition. In written reasons issued with the judgment, the court noted that:

> In this matter, there was a declaration of a grave public emergency by the City, and the City complied with the procedural guidelines of § 4762(C), § 4764, and Sec. 26-242, posting notice on the property on June 11, 2024 that warned of the IDC demolition. PFT filed its Petition for Review well outside of the 48-hour deadline to prevent emergency demolition of the property. Therefore, the City's imminent danger decision is final, and this Court lacks subject matter jurisdiction to review the IDC order of demolition.

Appellant appeals this judgment.

### Assignments of Error

Appellant makes three assignments of error in this appeal: (1) the district court was incorrect in holding that it lacked subject matter jurisdiction; (2) the district court erred in finding that the City did not affect Appellant's constitutional or property rights; (3) the district court was wrong in holding that Appellant

6

produced no evidence that the City erred in its decision to demolish the subject Building.

***Standard of Review***

In *Sunset Harbour, L.L.C. v. City of New Orleans*, 2023-0379, p. 9 (La. App. 4 Cir. 11/29/23), 378 So. 3d 157, 163, this court defined the standard by which an appellate court must review the challenged decision of an administrative agency. In that case, we wrote:

> This Court has previously held that "[t]he proceedings and findings of an administrative agency are presumed to be legitimate and correct." *Hayes v. City of New Orleans*, 21-0752, p. 7 (La. App. 4 Cir. 8/3/22), 346 So.3d 304, 309 (quoting *Mystery House, LLC v. City of New Orleans*, 20-0014, p. 6 (La. App. 4 Cir. 11/25/20), 365 So.3d 95, 99). "[A]n appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court." *Bourgeois v. La. State Racing Comm'n,* 10-0573, p. 7 (La. App. 4 Cir. 11/12/10), 51 So.3d 851, 856 (quoting *Smith v. State Dep't of Health & Hosp.,* 39,368, p. 4 (La. App. 2 Cir. 3/2/05), 895 So.2d 735, 739).

The court also held that the presumption of legitimacy and correctness may be rebutted if the appellant shows that the administrative decision was arbitrary or capricious; was an abuse of discretion; or was manifestly erroneous based on the evidence in the record on appeal.

Under this guidance, we proceed to analyze Appellant's assignments of error.

***Notice and Subject Matter Jurisdiction***

The trial court correctly stated the binding legal principle that the timeliness of the filing of an appeal from governmental determinations is jurisdictional and that once the delays have run the administrative decision becomes final. *Jumonville v. City of Kenner*, 09-1042 (La. App. 5 Cir. 7/27/10). However, based on the evidence in the record, we disagree with the trial court's determination that "the

7

City complied with the procedural guidelines of §4762(C), § 4764." We find further that Appellant correctly raised the issue of the City's non-compliance in its petition. Specifically, the petition alleged that the City's competing and conflicting procedures and notices coupled with their respective timing rendered the notices confusing and ineffective. By way of example, Appellant's petition complains of the timing of the notice of demolition and the City's failure to notify Appellant of the pendency of the Imminent Danger Determination for Emergency Abatement ("IDD") until more than a month after it was made.

Because the City failed to follow the strict requirements of notice under the statutory scheme for emergency abatement of a dangerous structure, and for other reasons below, we hold that the trial court erred in deciding that it had no subject matter jurisdiction.

The court in *Shropshire v. ANCO Installation*, 2014-0902, p. 6 (La. App. 1 Cir. 12/23/14), 168 So. 3d 601, 606, set forth the constitutional purposes and requirements of legal notice:

> Prior to an action that will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a state must provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

Clearly, the City's actions affected Appellant's property rights.[3] In this case, the statutory scheme calls for an extremely short notice period before deprivation of a property right.

---

[3] In its petition, Patin challenged the City's notification procedure on due process grounds. However, Patin failed to notify the attorney general of the challenge to the constitutionality of the statutory scheme for notification prior to demolition as required by La. R.S. 13:4448.

8

The state has provided several avenues for its political subdivisions to remove dangerous structures. The decision to remove such structures and the execution of those decisions is governed by the statutory scheme in La. R.S. 33:4761, *et seq*. The statutes provide property owners the right to contest the validity of the governmental determination that their buildings are dangerous. La. R.S. 33:4764(A) outlines the proper timing and procedure:

> The owner . . . may appeal from the decision of the . . . municipal governing authority to the district court having jurisdiction over the property. The appeal shall be made by the filing of a suit against the parish or municipality, setting forth the reasons why the decision or order of the governing body is illegal or improper, and the issue shall be tried de novo and by preference in the district court. Where a *grave public emergency* has been declared by the parish or municipal governing authority, the owner of the building who desires to prevent the demolition or removal thereof *must file his petition within forty-eight hours of the posting of the notice of the demolition* or removal order on the property and must, at the time of the filing of the petition, furnish such bond as may be fixed by the district judge to cover any damage that might be caused by the condition of the building.

Grave, imminent danger to the public is the justification for allowing an owner only two days within which to act to protect its property from destruction. In order to justify this unusually short time frame, fundamental fairness and due process require strict proof of two things. First, the notice must follow every statutory requirement, and second, there must be no question whatsoever that imminent danger exists. Every action of the agency responsible for the demolition must be consistent with the urgent need to protect the public. If the danger is not imminent, there are other procedures that the agency may use to demolish blighted property. The other available procedures permit the owner more time to challenge the correctness of the determination by the governmental body.

---

Therefore, we pretermit any discussion of the constitutional issues that might be raised in this regard.

With regard to the notice, the record shows that the City posted its demolition notice on Appellant's Building instead of making personal service or mailing to its address as permitted by La. R.S. 33:4765. However, a review of the notice shows that it fails to provide all the information required by the applicable statute. La. R.S. 33:4765(C)

> (1) Prior to the demolition or removal of the building or structure by the parish or municipality, the parish president, police jury, mayor, or some official designated by the appropriate authority shall serve notice on the owner, or his agent, and on the occupant of the building, if any there be, or upon the attorney at law appointed to represent the minor, interdict, or absentee owner, *giving the time when work will begin upon the demolition or removal of the building*, structure, or public nuisance.
>
> (2) Notwithstanding Paragraph (1) of this Subsection, in cases of *grave public emergency, the posting of the notice attached to the door or main entrance of the premises* or in a conspicuous place on the exterior of the premises giving the time when work will begin upon the demolition or removal of the building, structure, or public nuisance shall be considered sufficient notice to the owner, occupant or attorney at law appointed to represent the absentee owner.

(emphasis added)

One might argue that such strict adherence to the statute is overly cautious or unduly burdensome on the government. However, in this particular case, advising Appellant of the date on which demolition would begin might have raised the alarm that this was *not* a normal part of an administrative process whose object was to cause the renovation and repair of its Building. Advising Appellant that the Building would be demolished on a date certain in the very near future might have prevented possible confusion caused by the timing of the mixed administrative processes affecting Appellant's property rights.

***Arbitrary and Capricious Decision and Actions***

The timeline established by the City's records shows that the City decided, on May 8, 2024, to demolish the Building. The notice of this "emergency" was not posted on Appellant's Building until June 7, 2024, nearly a month later. In the meantime, Appellant was also notified of an upcoming administrative meeting to impose *fines* for violations of City ordinances and to issue orders to make repairs to the Building. This court does not in any manner assign any ill intent to the intersection of the notifications of the two divergent procedures, but anyone hoping to confuse the property owner could not have orchestrated the process much better.

The fact that the two notices intersected in time also points out a second flaw in this particular administrative procedure. The time lag of nearly three months[4] between the City's decision to demolish the Building and the actual demolition belies the underlying determination that the danger to the public was imminent or even urgent. The determination that the Building was a danger to the public is further undercut by the City's failure to enter into Appellant's fenced enclosure to examine the interior of the Building. It is difficult to understand how one might accurately gauge the structural integrity of a building without entering it. Understanding the City's assessment of the danger that the structure posed to the public is made even more difficult by the fact that the City had two letters from a licensed professional engineer testifying to the soundness of the structure.

As we noted above, all elements of the administrative process must comport with the assessment of an extreme urgency to the abatement of the public danger.

---

[4] The IDD was made on May 9, 2024 and the demolition was not completed until July 31, 2024. City records show that a contractor who was retained on an open-ended engagement to perform emergency demolitions was given the notice to proceed with the demolition on May 9, 2024, almost a full month before the notice was posted on Patin's building.

Neither the City's notification process nor the actual demolition demonstrated a sense of immediate public peril that is necessary to justify the use of this most drastic procedure for destroying private property.

The lack of urgency in the City's response to a danger that it declared was imminent suggests that the declaration was arbitrary. The City chose to declare the danger as imminent, thus opening the path to the demolition of Appellant's Building without administrative review. At its own discretion, it followed a course of action that proceeded at a more convenient pace. The City took no heed, nor did it engage an engineer, to review the opinion of Appellant's engineer that the structure of the Building was sound. The City never bothered to engage in a dialog with the Building's owner to gain entrance so that it could make a reliable independent determination of the Building's structural integrity. The City made no finding that the billboard structure on the property posed any danger to the public. Nevertheless, in issuing the contractor its notice to proceed and permit to demolish the Building, the City took no precaution to protect the billboard structure, which was an income-earning property in its own right.

When taken altogether, we find that the City's decision was arbitrary and capricious and that the actions implementing the decision were therefore, fatally flawed.

### Relief Available

Having found that the City acted arbitrarily and capriciously, we must turn now to the relief for which Appellant prayed in it its petition. The petition asks, among other things, that "the actions by the Defendants be declared null and void and reversed." A declaration of nullity of the City's actions is of no avail to Appellant. The City's actions were arbitrary and capricious and therefore

improper, but the demolition of the Building cannot be reversed, rendering that form of relief equally futile. Appellant's prayer for relief also seeks "such other and further relief which the Court deems necessary and proper at law and in equity." In this regard, an appellate court is unable to provide further relief at this stage of Appellant's litigation. This matter must be returned to the trial court in order to determine the proper procedure to move the matter forward to provide further relief.

## *Decree*

The judgment of the trial court is reversed. The trial court has and maintains subject matter jurisdiction of Appellant's claims. The failure of the City and its various agencies to follow appropriate procedures, as set forth above, bestows jurisdiction on that court and enables it to grant relief based on the facts and law. The case is therefore remanded to the district court for further proceedings consistent with this decision.

**REVERSED AND REMANDED**